# EXHIBIT A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

FERROVIAL SERVICES INFRASTRUCTURE INC.,
[Additional Parties Attachment form is attached.]

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

SHU WU, individually, and on behalf of other members of the general public similarly situated,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco Superior Court

CASE NUMBER:
*(Número del Caso):* **CGC 18-567744**

Civic Center Courthouse
400 McAllister St., San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Bevin Pike, Capstone Law APC, 1875 Century Park East, Ste. 1000, Los Angeles, CA 90067 (310) 556-4811

DATE: June **JUN 29 2018**    Clerk of the Court    Clerk, by _____ **NEYL WEBB**    , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Ferrovial Services Infrastructure, Inc. Amey-Broadspectrum Infrastructure, LLC ELA-Transfield Services Infrastructure INC.

   under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

BY FAX

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Wu v. Ferrovial Services Infrastructure Inc., et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

FERROVIAL SERVICES INFRASTRUCTURE INC. f/k/a BROADSPECTRUM INFRASTRUCTURE INC. f/k/a TRANSFIELD SERVICES INFRASTRUCTURE INC., a Virginia corporation; BROADSPECTRUM AMERICAS, INC. f/k/a TRANSFIELD SERVICES AMERICAS, INC., a Delaware corporation; TIMEC SPECIALTY SERVICES, INC. f/k/a BROADSPECTRUM SPECIALTY SERVICES, INC., a Delaware corporation; BROADSPECTRUM DOWNSTREAM SERVICES, INC., a Delaware corporation, and DOES 1 through 10, inclusive,

Page ____1____ of ____1____

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

1  Bevin Allen Pike (SBN 221936)
   Bevin.Pike@capstonelawyers.com
2  Jennifer R. Bagosy (SBN 223145)
   Jennifer.Bagosy@capstonelawyers.com
3  Suzy E. Lee (SBN 271120)
   Suzy.Lee@capstonelawyers.com
4  Ari Y. Basser (SBN 272618)
   Ari.Basser@capstonelawyers.com
5  Capstone Law APC
   1875 Century Park East, Suite 1000
6  Los Angeles, California 90067
   Telephone:     (310) 556-4811
7  Facsimile:     (310) 943-0396

8  Attorneys for Plaintiff Shu Wu

ENDORSED
FILED
San Francisco County Superior Court

JUN 2 9 2018

CLERK OF THE COURT
BY: _____ NEYL WEBB
                    Deputy Clerk

9
10          SUPERIOR COURT OF THE STATE OF CALIFORNIA
11              FOR THE COUNTY OF SAN FRANCISCO

12  SHU WU, individually, and on behalf of
    other members of the general public
    similarly situated,

13                  Plaintiff,
14
15              vs.
16  FERROVIAL SERVICES
    INFRASTRUCTURE INC. f/k/a
17  BROADSPECTRUM INFRASTRUCTURE
    INC. f/k/a TRANSFIELD SERVICES
18  INFRASTRUCTURE INC., a Virginia
    corporation; BROADSPECTRUM
19  AMERICAS, INC. f/k/a TRANSFIELD
    SERVICES AMERICAS, INC., a Delaware
20  corporation; TIMEC SPECIALTY
    SERVICES, INC. f/k/a
21  BROADSPECTRUM SPECIALTY
    SERVICES, INC., a Delaware corporation;
22  BROADSPECTRUM DOWNSTREAM
    SERVICES, INC., a Delaware corporation,
23  and DOES 1 through 10, inclusive,
24                  Defendants.
25
26
27
28

Case No.: **CGC-18-567744**

**CLASS ACTION COMPLAINT**

(1) Violation of California Labor Code §§ 510
    and 1198 (Unpaid Overtime);
(2) Violation of California Labor Code
    §§ 1182.12, 1194, 1197, 1197.1, and 1198
    (Unpaid Minimum Wages);
(3) Violation of California Labor Code
    §§ 226.7, 512(a), and 1198 (Failure to
    Provide Meal Periods);
(4) Violation of California Labor Code
    §§ 226.7 and 1198 (Failure to Provide Rest
    Periods);
(5) Violation of California Labor Code §§
    226(a), 1174(d), and 1198 (Non-Compliant
    Wage Statements and Failure to Maintain
    Payroll Records);
(6) Violation of California Labor Code §§ 201
    and 202 (Wages Not Timely Paid Upon
    Termination);
(7) Violation of California Labor Code § 2802
    (Unreimbursed Business Expenses);
(8) Violation of California Business &
    Professions Code §§ 17200, et seq.
    (Unlawful Business Practices); and
(9) Violation of California Business &
    Professions Code §§ 17200, et seq. (Unfair
    Business Practices)

**Jury Trial Demanded**

1    Plaintiff Shu Wu, individually and on behalf of all other members of the public

2 similarly situated, alleges as follows:

3          **JURISDICTION AND VENUE**

4    1.   This class action is brought pursuant to California Code of Civil Procedure

5 section 382.  The monetary damages, penalties, and restitution sought by Plaintiff exceed the

6 minimal jurisdiction limits of the Superior Court and will be established according to proof at

7 trial.  This Court has jurisdiction over this action pursuant to the California Constitution,

8 Article VI, section 10.  The statutes under which this action is brought do not specify any

9 other basis for jurisdiction.  Plaintiff's share of damages, penalties, and other relief sought in

10 this action does not exceed $75,000.

11    2.   This Court has jurisdiction over Defendants because Defendants are either

12 citizens of California, have sufficient minimum contacts in California, or otherwise

13 intentionally avail themselves of the California market so as to render the exercise of

14 jurisdiction over them by the California courts consistent with traditional notions of fair play

15 and substantial justice.

16    3.   Venue is proper in this Court, because Defendants employ persons in this

17 county and employed Plaintiff in this county, and thus a substantial portion of the transactions

18 and occurrences related to this action occurred in this county.

19             **THE PARTIES**

20    4.   Plaintiff Shu Wu is a resident of Oakland in Alameda County, California.

21 Defendants employed Plaintiff as a non-exempt, hourly-paid Tow Truck Operator from

22 approximately July 2014 to October 2017.  During his employment, Plaintiff worked for

23 Defendants in San Francisco, California.  Plaintiff worked approximately nine (9) or more

24 hours per day, five (5) days per week, and forty (40) hours or more per week.  His job duties

25 included, without limitation, remotely monitoring streets, patrolling for illegally parked cars,

26 and towing illegally parked cars.

27    5.   Defendant FERROVIAL SERVICES INFRASTRUCTURE INC. f/k/a

28 BROADSPECTRUM INFRASTRUCTURE INC. f/k/a TRANSFIELD SERVICES

INFRASTRUCTURE INC. was and is, upon information and belief, a Virginia corporation doing business in California, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county, the State of California, or the various states of the United States of America.

6.    Defendant BROADSPECTRUM AMERICAS, INC. f/k/a TRANSFIELD SERVICES AMERICAS, INC. was and is, upon information and belief, a Delaware corporation doing business in California, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county, the State of California, or the various states of the United States of America.

7.    Defendant TIMEC SPECIALTY SERVICES, INC. f/k/a BROADSPECTRUM SPECIALTY SERVICES, INC. was and is, upon information and belief, a Delaware corporation doing business in California, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county, the State of California, or the various states of the United States of America.

8.    Defendant BROADSPECTRUM DOWNSTREAM SERVICES, INC. was and is, upon information and belief, a Delaware corporation doing business in California, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county, the State of California, or the various states of the United States of America.

9.    Plaintiff is unaware of the true names or capacities of the Defendants sued herein under the fictitious names DOES 1 through 10, but will seek leave of this Court to amend the complaint and serve such fictitiously named Defendants once their names and capacities become known.

10.    Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, or managers of FERROVIAL SERVICES INFRASTRUCTURE INC. f/k/a BROADSPECTRUM INFRASTRUCTURE INC. f/k/a TRANSFIELD SERVICES INFRASTRUCTURE INC.; BROADSPECTRUM AMERICAS, INC. f/k/a TRANSFIELD SERVICES AMERICAS, INC.; TIMEC SPECIALTY SERVICES, INC. f/k/a BROADSPECTRUM SPECIALTY SERVICES, INC.; and/or

1 | BROADSPECTRUM DOWNSTREAM SERVICES, INC., at all relevant times.

2 | 11.   Plaintiff is informed and believes, and thereon alleges, that each and all of the

3 | acts and omissions alleged herein was performed by, or is attributable to, FERROVIAL

4 | SERVICES INFRASTRUCTURE INC. f/k/a BROADSPECTRUM INFRASTRUCTURE

5 | INC. f/k/a TRANSFIELD SERVICES INFRASTRUCTURE INC.; BROADSPECTRUM

6 | AMERICAS, INC. f/k/a TRANSFIELD SERVICES AMERICAS, INC.; TIMEC

7 | SPECIALTY SERVICES, INC. f/k/a BROADSPECTRUM SPECIALTY SERVICES, INC.;

8 | BROADSPECTRUM DOWNSTREAM SERVICES, INC., and/or DOES 1 through 10

9 | (collectively "Defendants" or "BROADSPECTRUM"), each acting as the agent, employee,

10 | alter ego, and/or joint venturer of, or working in concert with, each of the other co-Defendants

11 | and was acting within the course and scope of such agency, employment, joint venture, or

12 | concerted activity with legal authority to act on the others' behalf.  The acts of any and all

13 | Defendants were in accordance with, and represent, the official policy of Defendants.

14 | 12.   At all relevant times, Defendants, and each of them, ratified each and every act

15 | or omission complained of herein.  At all relevant times, Defendants, and each of them, aided

16 | and abetted the acts and omissions of each and all the other Defendants in proximately causing

17 | the damages herein alleged.

18 | 13.   Plaintiff is informed and believes, and thereon alleges, that each of said

19 | Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts,

20 | omissions, occurrences, and transactions alleged herein.

21 | 14.   Under California law, Defendants are jointly and severally liable as employers

22 | for the violations alleged herein because they have each exercised sufficient control over the

23 | wages, hours, working conditions, and employment status of Plaintiff and class members.

24 | Each Defendant had the power to hire and fire Plaintiff and class members, supervised and

25 | controlled their work schedule and/or conditions of employment, determined their rate of pay,

26 | and maintained their employment records.  Defendants suffered or permitted Plaintiff and

27 | class members to work and/or "engaged" Plaintiff and class members so as to create a

28 | common-law employment relationship.  As joint employers of Plaintiff and class members,

CLASS ACTION COMPLAINT

1     Defendants are jointly and severally liable for the civil penalties and all other relief available

2     to Plaintiff and class members under the law.

3          15.     Plaintiff is informed and believes, and thereon alleges, that at all relevant times,

4     Defendants, and each of them, have acted as joint employers with respect to Plaintiff and class

5     members because Defendants have:

6              (a)     jointly exercised meaningful control over the work performed by

7                    Plaintiff and class members;

8              (b)     jointly exercised meaningful control over Plaintiff and class members'

9                    wages, hours, and working conditions, including the quantity, quality

10                   standards, speed, scheduling, and operative details of the tasks

11                   performed by Plaintiff and class members;

12              (c)     jointly required that Plaintiff and class members perform work which is

13                   an integral part of Defendants' businesses; and

14              (d)     jointly exercised control over Plaintiff and class members as a matter of

15                   economic reality in that Plaintiff and class members were dependent on

16                   Defendants, who shared the power to set the wages of Plaintiff and class

17                   members and determine their working conditions, and who jointly

18                   reaped the benefits from the underpayment of their wages and

19                   noncompliance with other statutory provisions governing their

20                   employment.

21          16.     Plaintiff is informed and believes, and further alleges, that at all relevant times

22     there has existed a unity of interest and ownership between Defendants such that any

23     individuality and separateness between the entities has ceased.

24          17.     FERROVIAL SERVICES INFRASTRUCTURE INC. f/k/a

25     BROADSPECTRUM INFRASTRUCTURE INC. f/k/a TRANSFIELD SERVICES

26     INFRASTRUCTURE INC.; BROADSPECTRUM AMERICAS, INC. f/k/a TRANSFIELD

27     SERVICES AMERICAS, INC.; TIMEC SPECIALTY SERVICES, INC. f/k/a

28     BROADSPECTRUM SPECIALTY SERVICES, INC.; BROADSPECTRUM

1    DOWNSTREAM SERVICES, INC., and DOES 1 through 10 are therefore alter egos of each

2    other.

3        18.    Adherence to the fiction of the separate existence of Defendants would permit

4    an abuse of the corporate privilege, and would promote injustice by protecting Defendants

5    from liability for the wrongful acts committed by it under the name FERROVIAL,

6    BROADSPECTRUM, TRANSFIELD, or TIMEC.

7        19.    Plaintiff further alleges, upon information and belief, that Defendants

8    FERROVIAL SERVICES INFRASTRUCTURE INC. f/k/a BROADSPECTRUM

9    INFRASTRUCTURE INC. f/k/a TRANSFIELD SERVICES INFRASTRUCTURE INC.;

10   BROADSPECTRUM AMERICAS, INC. f/k/a TRANSFIELD SERVICES AMERICAS,

11   INC.; TIMEC SPECIALTY SERVICES, INC. f/k/a BROADSPECTRUM SPECIALTY

12   SERVICES, INC.; and BROADSPECTRUM DOWNSTREAM SERVICES, INC., are alter

13   egos of each other for the following reasons:

14            (a)    The Broadspectrum companies, including BROADSPECTRUM

15                   INFRASTRUCTURE INC. and BROADSPECTRUM AMERICAS,

16                   INC., which were formerly known as Transfield Services Ltd (TSE),

17                   including TRANSFIELD SERVICES INFRASTRUCTURE INC. and

18                   TRANSFIELD SERVICES AMERICAS, INC., are business entities

19                   headquartered in Australia;[1]

20            (b)    Spanish company Ferrovial, including FERROVIAL SERVICES

21                   INFRASTRUCTURE INC., acquired the Broadspectrum companies in

22                   June 2016;[2]

23            (c)    The entity "BROADSPECTRUM DOWNSTREAM SERVICES, INC."

24

25   [1] "Broadspectrum — Wikipedia," available at
     https://en.wikipedia.org/wiki/Broadspectrum, last accessed June 26, 2018.
26   [2] "Ferrovial completes acquisition of Broadspectrum," available at
     http://www.broadspectrum.com/news-2016/ferrovial-completes-acquisition-of-broadspectrum
27   ("Broadspectrum is now 100 per cent owned by Ferrovial Services Australia Pty Limited . . . .
     Broadspectrum was removed from the official list of the Australian Securities Exchange
28   (ASX) at the close of trading on Tuesday, 28 June 2016, just over 15 years since it was
     originally listed (as Transfield Services)."), last accessed June 26, 2018.

CLASS ACTION COMPLAINT

| | | |
|---|---|---|
| 1 | | is listed on the California Secretary of State's website at the address |
| 2 | | "10814 JOLLYVILLE ROAD, SUITE 160, AUSTIN TX 78759." This |
| 3 | | is the same address listed on Plaintiff's W-2 form for the entity |
| 4 | | "TRANSFIELD SERVICES INFRASTRUCTURE INC."; |
| 5 | (d) | On information and belief, FERROVIAL SERVICES |
| 6 | | INFRASTRUCTURE INC. f/k/a BROADSPECTRUM |
| 7 | | INFRASTRUCTURE INC. f/k/a TRANSFIELD SERVICES |
| 8 | | INFRASTRUCTURE INC.; BROADSPECTRUM AMERICAS, INC. |
| 9 | | f/k/a TRANSFIELD SERVICES AMERICAS, INC.; TIMEC |
| 10 | | SPECIALTY SERVICES, INC. f/k/a BROADSPECTRUM |
| 11 | | SPECIALTY SERVICES, INC.; and BROADSPECTRUM |
| 12 | | DOWNSTREAM SERVICES, INC. utilize the same standardized |
| 13 | | employment forms and issue the same employment policies; and |
| 14 | (e) | On information and belief, FERROVIAL SERVICES |
| 15 | | INFRASTRUCTURE INC. f/k/a BROADSPECTRUM |
| 16 | | INFRASTRUCTURE INC. f/k/a TRANSFIELD SERVICES |
| 17 | | INFRASTRUCTURE INC.; TIMEC SPECIALTY SERVICES, INC. |
| 18 | | f/k/a BROADSPECTRUM SPECIALTY SERVICES, INC.; and |
| 19 | | BROADSPECTRUM DOWNSTREAM SERVICES, INC. share the |
| 20 | | same agent for service of process, "CORPORATION SERVICE |
| 21 | | COMPANY." |

**GENERAL ALLEGATIONS**

20.     Defendants are Virginia and Delaware corporations which provide infrastructure services in a broad range of areas, including property and facilities management, defense, transportation, utilities, and mining and chemical processing.  Defendants operate in 24 countries and maintain their corporate headquarters in North Sydney, Australia.

21.     Upon information and belief, Defendants maintain a single, centralized Human Resources (HR) department, at their corporate headquarters in Austin, Texas, which is

1    responsible for conducting Defendants' recruiting and hiring of new employees, as well as

2    communicating and implementing Defendants' company-wide policies to employees

3    throughout California.

4         22.    In particular, Plaintiff and class members, on information and belief, received

5    the same standardized documents and/or written policies.  Upon information and belief, the

6    usage of standardized documents and/or written policies, including new hire documents,

7    indicate that Defendants dictated policies at the corporate level and implemented them

8    company-wide, regardless of their employees' assigned locations or positions.  Upon

9    information and belief, Defendants set forth uniform policies and procedures in several

10   documents provided at an employee's time of hire.  For example, at the time Plaintiff was

11   hired, he received documents including, but not limited to, the Offer Letter and Employee

12   Handbook.

13        23.    Upon information and belief, Defendants maintain a centralized Payroll

14   department at their corporate headquarters in Austin, Texas, which processes payroll for all

15   non-exempt, hourly-paid employees working for Defendants at their various locations and

16   jobsites in California, including Plaintiff and class members.  Based upon information and

17   belief, Defendants issue the same formatted wage statements to all non-exempt, hourly-paid

18   employees in California, irrespective of their work locations.  Upon information and belief,

19   Defendants process payroll for departing employees in the same manner throughout the State

20   of California, regardless of the manner in which each employee's employment ends.

21        24.    Defendants continue to employ non-exempt or hourly-paid employees in

22   California.

23        25.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

24   mentioned, Defendants were advised by skilled lawyers and other professionals, employees

25   and advisors knowledgeable about California labor and wage law, employment and personnel

26   practices, and about the requirements of California law.

27        26.    Plaintiff is informed and believes, and thereon alleges, that Plaintiff and class

28   members were not paid for all hours worked because all hours worked were not recorded.

27.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive certain wages for overtime compensation and that they were not receiving certain wages for overtime compensation.

28.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for work that was required to be done off-the-clock.  In violation of the California Labor Code, Plaintiff and class members were not paid at least minimum wages for work done off-the-clock.

29.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to meal periods in accordance with the Labor Code or payment of one (1) additional hour of pay at their regular rates of pay when they were not provided with timely, uninterrupted, thirty (30) minute meal periods and that Plaintiff and class members were not provided with all meal periods or payment of one (1) additional hour of pay at their regular rates of pay when they did not receive a timely, uninterrupted, thirty (30) minute meal period.

30.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to rest periods in accordance with the Labor Code and applicable IWC Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not provided with a compliant rest period and that Plaintiff and class members were not provided compliant rest periods or payment of one (1) additional hour of pay at their regular rates of pay when they were not provided a compliant rest period.

31.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive complete and accurate wage statements in accordance with California law.  In violation of the California Labor Code, Plaintiff and class members were not provided complete and accurate wage statements.

32.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that they had a duty to maintain accurate and complete payroll records in accordance with the Labor Code and applicable IWC Wage Order, but willfully, knowingly, and intentionally failed to do so.

33.     . Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to timely payment of all wages earned upon termination of employment.  In violation of the California Labor Code, Plaintiff and class members did not receive payment of all wages due, including, but not limited to, overtime wages, minimum wages, and meal and rest period premiums, within permissible time periods.

34.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to timely payment of wages during their employment.  In violation of the California Labor Code, Plaintiff and class members did not receive payment of all wages, including, but not limited to, overtime wages, minimum wages, and meal and rest period premiums, within permissible time periods.

35.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, that Defendants knew or should have known that they had a duty to cover the costs and expenses Plaintiff and class members incurred obtaining mandatory physical examinations and/or drug tests, but willfully, knowingly, and intentionally failed to do so.

36.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive full reimbursement for all business-related expenses and costs they incurred during the course and scope of their employment and that they did not receive full reimbursement of applicable business-related expenses and costs incurred.

37.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants knew or should have known that they had a duty to provide Plaintiff and class members with written notice of the material terms of their employment with Defendants as required by the California Wage Theft Prevention Act, but willfully,

CLASS ACTION COMPLAINT

1    knowingly, and intentionally failed to do so.

2    38.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

3    mentioned, Defendants knew or should have known that they had a duty to compensate

4    Plaintiff and class members for all hours worked, and that Defendants had the financial ability

5    to pay such compensation, but willfully, knowingly, and intentionally failed to do so, and

6    falsely represented to Plaintiff and class members that they were properly denied wages, all in

7    order to increase Defendants' profits.

8    ## CLASS ACTION ALLEGATIONS

9    39.    Plaintiff brings this action on his own behalf, as well as on behalf of each and

10   all other persons similarly situated, and thus seeks class certification under California Code of

11   Civil Procedure section 382.

12   40.    All claims alleged herein arise under California law for which Plaintiff seeks

13   relief authorized by California law.

14   41.    Plaintiff's proposed class consists of and is defined as follows:

15
16           All persons who worked for Defendants as non-exempt, hourly-
             paid employees in California, within four years prior to the filing
             of this complaint until the date of trial ("Class").

17   42.    Plaintiff's proposed subclass consists of and is defined as follows:

18
19           All persons who worked for Defendants as non-exempt, hourly-
             paid employees in California and who received at least one wage
20           statement within one year prior to the filing of this complaint
             until the date of trial ("Subclass").

21   43.    Members of the Class and Subclass are referred to herein as "class members."

22   44.    Plaintiff reserves the right to redefine the Class and to add subclasses as

23   appropriate based on further investigation, discovery, and specific theories of liability.

24   45.    There are common questions of law and fact as to class members that

25   predominate over questions affecting only individual members, including, but not limited to:

26           (a)    Whether Defendants required Plaintiff and class members to work over

27                  eight (8) hours per day, over twelve (12) hours per day, or over forty

28                  (40) hours per week and failed to pay all legally required overtime

CLASS ACTION COMPLAINT

1    compensation to Plaintiff and class members;

2    (b)    Whether Defendants failed to pay Plaintiff and class members at least

3    minimum wages for all hours worked;

4    (c)    Whether Defendants failed to provide Plaintiff and class members with

5    meal periods;

6    (d)    Whether Defendants failed to provide Plaintiff and class members with

7    rest periods;

8    (e)    Whether Defendants provided Plaintiff and class members with

9    complete and accurate wage statements as required by California Labor

10   Code section 226(a);

11   (f)    Whether Defendants failed to pay earned overtime wages, minimum

12   wages, and meal and rest period premiums due to Plaintiff and class

13   members upon their discharge;

14   (g)    Whether Defendants failed timely to pay overtime wages, minimum

15   wages, and meal and rest period premiums to Plaintiff and class

16   members during their employment;

17   (h)    Whether Defendants failed to reimburse Plaintiff and class members for

18   necessary and required business-related expenditures and/or losses

19   incurred by them in the scope of their employment;

20   (i)    Whether Defendants failed to pay Plaintiff and class members for the

21   costs of mandatory physical examinations and/or drug testing;

22   (j)    Whether Defendants failed to provide written notice of information

23   material to Plaintiff and class members' employment with Defendants;

24   (k)    Whether Defendants engaged in unlawful and unfair business practices

25   in violation of California Business & Professions Code sections 17200,

26   *et seq.*; and,

27   (l)    The appropriate amount of damages, restitution, or monetary penalties

28   resulting from Defendants' violations of California law.

CLASS ACTION COMPLAINT

46.     There is a well-defined community of interest in the litigation and the class members are readily ascertainable:

(m)     Numerosity:  The class members are so numerous that joinder of all members would be unfeasible and impractical.  The membership of the entire class is unknown to Plaintiff at this time; however, the class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendants' employment records.

(n)     Typicality:  Plaintiff is qualified to, and will, fairly and adequately protect the interests of each class member with whom he has a well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all class members as demonstrated herein.

(o)     Adequacy:  Plaintiff is qualified to, and will, fairly and adequately protect the interests of each class member with whom he has a well-defined community of interest and typicality of claims, as demonstrated herein.  Plaintiff acknowledges that he has an obligation to make known to the Court any relationship, conflicts or differences with any class member.  Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement.  Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member.

(p)     Superiority:  The nature of this action makes the use of class action adjudication superior to other methods.  A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the

entire class.

(q)  Public Policy Considerations:  Employers in the State of California violate employment and labor laws every day.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing actions because they believe their former employers might damage their future endeavors through negative references and/or other means.  Class actions provide the class members who are not named in the complaint with a type of anonymity that allows for the vindication of their rights while simultaneously protecting their privacy.

## FIRST CAUSE OF ACTION

### Violation of California Labor Code §§ 510 and 1198—Unpaid Overtime

### (Against All Defendants)

47.  Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

48.  Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable wage order.  California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees.  The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

49.  California Labor Code section 1198 and the applicable IWC Wage Order provide that it is unlawful to employ persons without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay, depending on the number of hours worked by the person on a daily or weekly basis.

50.  Specifically, the applicable IWC Wage Order provides that Defendants are and were required to pay Plaintiff and class members working more than eight (8) hours in a day or more than forty (40) hours in a workweek, at the rate of time and one-half (1½) for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a

1  workweek.

2       51.    The applicable IWC Wage Order further provides that Defendants are and were

3  required to pay Plaintiff and class members working more than twelve (12) hours in a day,

4  overtime compensation at a rate of two (2) times their regular rate of pay, and were required to

5  pay Plaintiff and other class members at a rate of two (2) times their regular rate of pay for

6  hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of a work in a

7  workweek.

8       52.    At all relevant times, Defendants willfully failed to pay all overtime wages

9  owed to Plaintiff and class members.  At all relevant times, Plaintiff and class members were

10  not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a

11  day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week,

12  because all hours worked were not recorded.

13       53.    First, during the relevant time period, Defendants had a company-wide policy

14  and/or practice of requiring Plaintiff and class members to wait until the next shift of coverage

15  arrived to relieve them.  However, Plaintiff and class members were not compensated for the

16  time they remained on duty following the end of their scheduled shifts, which resulted in work

17  performed off-the-clock.  For example, the shift following Plaintiff's was scheduled to start at

18  4:30 a.m., but if the next shift's employees did not show up until 5:00 a.m., he was required to

19  stay on duty for an additional half hour until he could be relieved by the next shift.  Because

20  there was no time clock on-site, everyone on a particular shift denoted their hours on a shared

21  log, which would be submitted at the end of the scheduled shift.  When Plaintiff was required

22  to stay past the end of his scheduled shift, he was not able to alter the log because it had

23  already been submitted to Defendants, resulting in work for which he was not paid.

24  Additionally, on information and belief, Plaintiff and class members were subject to their

25  supervisors altering their clock-in and clock-out times in order to limit the amount of overtime

26  Plaintiff and class members could accrue.

27       54.    Further, Defendants have a company-wide policy of understaffing their job

28  sites, resulting in a lack of meal break coverage.  Due to the lack of coverage caused by

1    understaffing, Defendants forced Plaintiff and class members to work through their meal

2    breaks by requiring them to remain on or near the premises for their meal breaks, including

3    sitting in the office and watching security monitors during their meal breaks.  Because

4    Plaintiff and class members were restricted from leaving the premises during meal periods,

5    they were denied the ability to use their meal periods freely for their own purposes.  Thus,

6    Defendants effectively maintained control over Plaintiff and class members during meal

7    periods.  Additionally, Defendants required Plaintiff and class members to respond to

8    company-issued radio calls at all times, including during their meal breaks, causing Plaintiff

9    and class members to have their meal periods interrupted by work.

10        55.    As a result of Defendants' company-wide policies and/or practices, including

11   but not necessarily limited to understaffing and a lack of meal period coverage, Plaintiff and

12   class members were not permitted and authorized to take uninterrupted 30-minute meal

13   periods during shifts in which they were entitled to receive meal periods.  Thus, Plaintiff and

14   class members missed meal periods and had their meal periods interrupted, but were not

15   compensated for this time.  Plaintiff and class members did not sign valid meal break waivers

16   on days that they were entitled to meal periods but were not relieved of all duties.

17        56.    Defendants knew or should have known that, as a result of their policies and

18   practices, Plaintiff and class members were performing some of their assigned duties during

19   unpaid meal periods and after their shifts, and were suffered or permitted to perform work for

20   which they were not paid.  Defendants also knew, or should have known, that they did not

21   compensate Plaintiff and class members for this off-the-clock work and unrecorded overtime

22   hours.

23        57.    Because Plaintiff and class members worked shifts in excess of eight (8) hours

24   a day or more and forty (40) hours a week or more, much of this off-the-clock work performed

25   during unpaid meal periods qualified for overtime premium pay.  Therefore, Plaintiff and class

26   members were not paid overtime wages for all of the overtime hours they actually worked.

27        58.    Defendants' failure to pay Plaintiff and class members the balance of overtime

28   compensation, as required by California law, violates the provisions of California Labor Code

sections 510 and 1198. Pursuant to California Labor Code section 1194, Plaintiff and class members are entitled to recover their unpaid overtime compensation, as well as interest, costs, and attorneys' fees.

**SECOND CAUSE OF ACTION**

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198—Unpaid**

**Minimum Wages**

**(Against all Defendants)**

59.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

60.     At all relevant times, California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 provide that the minimum wage for employees fixed by the IWC is the minimum wage to be paid to employees, and the payment of a wage less than the minimum so fixed is unlawful. Compensable work time is defined by the applicable wage order as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code. Regs. tit. 8, § 11090(2)(G) (defining "Hours Worked").

61.     As set forth above, Defendants have, and continue to have, a company-wide policy and/or practice of requiring that Plaintiff and class members perform work off-the-clock after their scheduled shifts and during meal periods, including remaining on duty until being relieved by employees on the following shift, staying on or near the work premises during meal periods, and/or communicating with Defendants' management via radio calls, work for which they were not paid. Additionally, Defendants have, and continue to have, company-wide policies and/or practices of understaffing their job sites, which impeded Plaintiff and class members from taking full, uninterrupted meal periods to which they were entitled and resulted in them working off-the-clock. In addition, as described above, Defendants systematically failed to pay Plaintiff and class members for actual hours worked because these hours were not always correctly recorded or, on information and belief, Defendants adjusted employee time records.

62.     During the relevant time period, Defendants also maintained and implemented a company-wide policy of requiring all newly-hired employees to travel to a medical clinic on their own time and using their own personal vehicles to undergo a mandatory drug test. Plaintiff spent several hours traveling to and from the clinic and undergoing the mandatory drug testing.  However, Defendants did not compensate Plaintiff and class members for the time they spent traveling to and from the testing or for the time they spent undergoing drug testing.

63.     Defendants did not pay at least minimum wages for all hours worked by Plaintiff and class members.  To the extent that these off-the-clock hours did not qualify for overtime premium payment, Defendants did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.  Accordingly, Defendants failed to pay at least minimum wages to Plaintiff and class members for all of the hours they worked.

64.     Defendants' failure to pay Plaintiff and class members minimum wages violates California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.  Pursuant to California Labor Code section 1194.2, Plaintiff and class members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

**THIRD CAUSE OF ACTION**

**Violations of California Labor Code, §§ 226.7, 512(a), and 1198—Meal Period Violations**

**(Against all Defendants)**

65.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

66.     At all relevant times herein set forth, California Labor Code section 512(a) provides that an employer may not require, cause, or permit an employee to work for a period of more than five (5) hours per day without providing the employee with a meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee.  Under California law, first meal periods must start after no more

CLASS ACTION COMPLAINT

1    than five hours. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-1042 (Cal.

2    2012).

3         67.    At all relevant times herein set forth, California Labor Code section 226.7 and

4    512(a), and 1198 provide that no employer shall require an employee to work during any meal

5    period mandated by an applicable order of the IWC.

6         68.    At all relevant times herein set forth, Labor Code sections 226.7 and 512(a),

7    1198 and the applicable IWC Wage Order also require employers to provide a second meal

8    period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or

9    to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if

10   the total hours worked is no more than twelve (12) hours, the second meal period may be

11   waived by mutual consent of the employer and the employee only if the first meal period was

12   not waived.

13        69.    At all relevant times, as stated above, Defendants had, and continue to have, a

14   company-wide policy and/or practice of understaffing job sites, which resulted in a lack of

15   sufficient meal break coverage and prevented Plaintiff and class members from taking all

16   timely, uninterrupted meal periods to which they were entitled.  For example, there were

17   usually only two or three people on duty during a shift.  During this time, Plaintiff and class

18   members received late, shortened, and/or interrupted meal breaks.  Plaintiff and class

19   members were required to work throughout their shifts without taking compliant meal periods

20   to adhere to Defendants' policies and expectations.  Further, Defendants have, on a company-

21   wide basis, failed to adhere to a schedule of meal periods even though they are aware and

22   know that employees are entitled to such meal periods, resulting in Plaintiff and class

23   members taking their meal periods late.  For example, Plaintiff would only receive his meal

24   periods 5.5 or 6.5 hours after the start of his shift.

25        70.    Additionally, Defendants discouraged and impeded Plaintiff and class members

26   from taking compliant breaks by failing to provide them with an accurate clock-in and clock-

27   out mechanism at job sites.  Instead, Plaintiff and class members were expected to note their

28   clock-in and clock-out times in a logbook at the end of their shifts, which, on information and

CLASS ACTION COMPLAINT

belief, was subject to falsification, as Defendants' management could adjust time records to reflect compliant meal periods if Plaintiff and class members failed to denote them.  Plaintiff and class members missed their meal periods altogether, had their meal periods interrupted to return to work, or waited extended periods of time before taking meal periods, but these violations were not reflected in Plaintiff's and class members' time records.

71.    At all times herein mentioned, Defendants knew or should have known that, as a result of their policies, including understaffing, failure to adhere to a schedule of meal breaks, and requirement of answering radio calls and remaining on or near the work premises, Plaintiff and class members have been required to perform some of their assigned duties during meal periods.  As a result, Plaintiff and class members had to work through part or all of their meal periods.  For example, Plaintiff sometimes had to eat his meals while staying in the office or watching monitors, per Defendants' instructions.

72.    Defendants further knew or should have known that Defendants did not pay Plaintiff and class members meal period premium wages when meal periods were interrupted or missed because, on information and belief, Defendants adjusted employee time records to reflect compliant meal periods, even if none were taken.  Plaintiff and class members did not sign valid meal break waivers on days that they were entitled to meal periods and were not relieved of all duties.

73.    Moreover, upon information and belief, Defendants engaged in a systematic, company-wide practice and/or policy of not paying meal period premiums for Plaintiff and class members, regardless of whether they were able to take a compliant meal break, in violation of the applicable IWC Wage Order and Labor Code sections 226.7 and 512(a).  As a result, Defendants failed to provide Plaintiff and class members compliant meal periods in violation of California Labor Code sections 226.7 and 512 and failed to pay the full meal period premiums due.

74.    Defendants' conduct violates the applicable IWC Wage Order, and California Labor Code sections 226.7, 512(a), and 1198.  Plaintiff and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular

1   rate of compensation for each work day that the meal period was not provided.

2                          **FOURTH CAUSE OF ACTION**

3   **Violation of California Labor Code §§ 226.7 and 1198—Rest Break Violations**

4                          **(Against all Defendants)**

5          75.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each

6   and every allegation set forth above.

7          76.     At all relevant times herein set forth, the applicable IWC Wage Order and

8   California Labor Code sections 226.7 and 1198 were applicable to Plaintiff and class

9   members' employment by Defendants.

10         77.     At all relevant times, the applicable IWC Wage Order provides that "[e]very

11  employer shall authorize and permit all employees to take rest periods, which insofar as

12  practicable shall be in the middle of each work period" and that the "rest period time shall be

13  based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4)

14  hours or major fraction thereof" unless the total daily work time is less than three and one-half

15  (3½) hours.

16         78.     At all relevant times, California Labor Code section 226.7 provides that no

17  employer shall require an employee to work during any rest period mandated by an applicable

18  order of the California IWC.  To comply with its obligation to provide rest periods under

19  California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must

20  "relinquish any control over how employees spend their break time, and relieve their

21  employees of all duties —— including the obligation that an employee remain on call.  A rest

22  period, in short, must be a period of rest." *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th

23  257, 269-270 (2016).  Pursuant to the applicable IWC Wage Order and California Labor Code

24  section 226.7(b), Plaintiff and class members are entitled to recover from Defendants one (1)

25  additional hour of pay at their regular rates of pay for each work day that a required rest

26  period was not provided.

27         79.     During the relevant time period, Defendants' company-wide policy and practice

28  of requiring Plaintiff and class members to carry and respond to radio calls prevented them

from being relieved of all duty to take compliant rest periods. Furthermore, Defendants had a uniform policy of failing to schedule or provide rest breaks. As a result, Defendants failed to provide a mechanism for Plaintiff and class members to take compliant rest breaks.

80.     Plaintiff and class members worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours, without receiving all uninterrupted ten (10) minute rest periods to which they were entitled. Throughout his employment, Plaintiff was not permitted to take full and complete ten (10) minute rest periods, and instead would experience interrupted rest periods due to calls on his radio which he was required to answer.

81.     Defendants have also engaged in a systematic, company-wide practice and/or policy of not paying rest period premiums owed when rest periods are not provided. As a result, Defendants denied Plaintiff and class members rest periods and failed to pay them rest period premium wages due, in violation of Labor Code section 226.7 and the applicable IWC Wage Order.

82.     Defendants' conduct violates the applicable IWC Wage Order and California Labor Code sections 226.7 and 1198. Plaintiff and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that a compliant rest period was not provided.

## FIFTH CAUSE OF ACTION

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

**(Against all Defendants)**

83.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

84.     At all relevant times herein set forth, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate and complete itemized wage statement in writing, including, but not limited to, the name and address of the legal entity that is the employer, the inclusive dates of the pay period, total hours worked, and all applicable rates of pay.

85. At all relevant times, Defendants have knowingly and intentionally provided Plaintiff and class members with uniform, incomplete, and inaccurate wage statements. For example, Defendants issued uniform wage statements to Plaintiff and class members that failed to correctly list: gross wages earned; total hours worked; net wages earned; and all applicable hourly rates in effect during the pay period, including overtime rates of pay, and the corresponding number of hours worked at each hourly rate. Specifically, Defendants violated sections 226(a)(1), 226(a)(2), 226(a)(5), 226(a)(8), and 226(a)(9).

86. First, Defendants failed to list all applicable hourly rates in effect during the pay period, namely, rates of pay for overtime, in violation of section 226(a)(9). For example, on some of Plaintiff's paystubs, no overtime or holiday pay rate is listed. Additionally, because Defendants deducted time worked from Plaintiff's and class members' wage statements and employment records for meal periods they did not actually receive, Defendants unlawfully deducted wages earned and meal period premiums that should have been paid. Thus, Defendants did not furnish wage statements to Plaintiff and class members which contained the correct amount of gross wages earned (Labor Code § 226(a)(1)), accurate totals of the hours worked (Labor Code § 226(a)(2)), correct amount of net wages earned (Labor Code § 226(a)(5)), or accurate number of hours worked at each hourly rate (Labor Code § 226(a)(9).

87. Separate from these violations, Defendants issued uniform wage statements to Plaintiff and class members that failed to list the correct name and address of the legal entity of the actual employer in violation of Labor Code section 226(a)(8). The purpose of section 226(a)(8) is to provide California employees with transparency as to the true identity of their employer, to allow the employee to contact their employer during employment in the future for various reasons, including, filing an administrative, judicial claim or other action to seek relief against their employer, to obtain unemployment benefits, etc. This includes providing employees with a physical address of the employer and not a Post Office Box.

88. During the relevant time period, Defendants systematically, and on a company-wide basis, issued wage statements to Plaintiff and class members that list the employing

CLASS ACTION COMPLAINT

entity's name as "Broadspectrum Infrastructure" with the address "1330 Post Oak Blvd Suite 1250, Houston, TX 77056," which is not the correct name or address of the legal entity that employs Plaintiff and class members.  According to the California Secretary of State's website, there is no such entity named "Broadspectrum Infrastructure" registered to do business in California.  However, a similarly-named entity named "BROADSPECTRUM DOWNSTREAM SERVICES, INC." is listed on the California Secretary of State's website at the address "10814 JOLLYVILLE ROAD, SUITE 160, AUSTIN TX 78759."  Further adding to the confusion, Plaintiff also received a W-2 statement that names his employer as "TRANSFIELD SERVICES INFRASTRUCTURE INC." which does not appear on his paystub, further muddling Plaintiff's efforts to identify his correct employer and the address at which they can be contacted.

89.     The wage statement deficiencies also include, without limitation, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the inclusive dates of the period for which aggrieved employees were paid; and/or failing to state all hours worked as a result of not recording or stating hours worked off-the-clock.

90.     California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders.  Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period.  At all relevant times, Defendants failed, on a company-wide basis, to keep records of meal period start and stop times for Plaintiff and class members in violation of section 1198.

91.     California Labor Code section 1174(d) provides that "[e]very person employing

1    labor in this state shall … [k]eep a record showing the names and addresses of all employees

2    employed and the ages of all minors" and "[k]eep, at a central location in the state or at the

3    plants or establishments at which employees are employed, payroll records showing the hours

4    worked daily by and the wages paid to, and the number of piece-rate units earned by and any

5    applicable piece rate paid to, employees employed at the respective plants or

6    establishments…" At all relevant times, and in violation of Labor Code section 1174(d),

7    Defendants willfully failed to maintain accurate payroll records for Plaintiff and class

8    members showing the daily hours they worked and the wages paid thereto as a result of failing

9    to record the off-the-clock hours that they worked.

10          92.    Plaintiff and class members are entitled to recover from Defendants the greater

11    of their actual damages caused by Defendants' failure to comply with California Labor Code

12    section 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000) per

13    employee.

14                        **SIXTH CAUSE OF ACTION**

15    **Violation of California Labor Code §§ 201 and 202 – Wages Not Timely Paid Upon**

16                            **Termination**

17                        **(Against all Defendants)**

18          93.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

19    and every allegation set forth above.

20          94.    This cause of action is dependent upon, and wholly derivative of, the overtime

21    wages, minimum wages, and meal and rest period premium wages that were not timely paid to

22    Plaintiff, and those class members who are no longer employed by Defendants, upon their

23    termination.

24          95.    At all times relevant herein set forth, Labor Code sections 201 and 202 provide

25    that if an employer discharges an employee, the wages earned and unpaid at the time of

26    discharge are due and payable immediately, and that if an employee voluntarily leaves his or

27    her employment, his or her wages shall become due and payable not later than seventy-two

28    (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of

1    his or her intention to quit, in which case the employee is entitled to his or her wages at the

2    time of quitting.

3         96.    At all relevant times, Defendants willfully failed to pay Plaintiff his final wages

4    within the statutory time limits.  Specifically, Defendants terminated Plaintiff in person at

5    Defendants' San Francisco office on or around October 11, 2017, but failed to tender him his

6    final paycheck immediately.  Instead, Defendants did not provide Plaintiff with a final

7    paycheck until the next regularly scheduled payday approximately two (2) weeks later when

8    he received it in the mail.

9         97.    Additionally, Defendants willfully failed to pay Plaintiff and class members

10   who are no longer employed by Defendants the earned and unpaid wages set forth above,

11   including but not limited to, overtime wages, minimum wages, and meal and rest period

12   premium wages, either at the time of discharge, or within seventy-two (72) hours of their

13   leaving Defendants' employ.

14        98.    Defendants' failure to pay Plaintiff and those class members who are no longer

15   employed by Defendants their wages earned and unpaid at the time of discharge, or within

16   seventy-two (72) hours of their leaving Defendants' employ, violates Labor Code sections 201

17   and 202.  Plaintiff and class members are therefore entitled to recover from Defendants the

18   statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a

19   thirty (30) day maximum pursuant to California Labor Code section 203.

20   **SEVENTH CAUSE OF ACTION**

21   **Violation of California Labor Code § 2802 – Unpaid Business-Related Expenses**

22   **(Against all Defendants)**

23        99.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

24   and every allegation set forth above.

25        100.   At all times herein set forth, California Labor Code section 2802 provides that

26   an employer must reimburse employees for all necessary expenditures and losses incurred by

27   the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is

28   to prevent employers from passing off their cost of doing business and operating expenses on

1  to their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144
2  (2014).

3      101.    First, Defendants required Plaintiff and class members to utilize their own
4  personal cellular phones to carry out their job duties and communicate with other employees,
5  but Defendants failed to reimburse them for the costs of their cellular phone plans and/or data
6  plans. Although they were provided company-issued radios, there were occasions when the
7  radios were not work or were out of range. Since Plaintiff and class members did not work in
8  an office setting, they had no access to phones other than their own, and they frequently had to
9  communicate with each other to coordinate work-related responsibilities. Although
10 Defendants required Plaintiff and class members to utilize their personal cellular phones to
11 carry out work-related responsibilities, Defendants failed to reimburse them for these
12 expenses.

13     102.    Second, as stated above, Defendants required Plaintiff and class members to
14 travel in their own personal vehicles to designated medical clinics in order to undergo
15 mandatory drug testing, but did not reimburse them for their travel expenses. Plaintiff
16 followed Defendants' instructions, traveled to the clinic, and underwent the drug test.
17 Although Defendants required Plaintiff and class members to obtain the tests, Defendants
18 failed to reimburse them for these expenses.

19     103.    Defendants could have provided Plaintiff and class members with the actual
20 tools required for use on the job, including company phones, company vehicles, or company-
21 provided transportation to medical or physical examinations, or provided reimbursement for
22 their cellular phone and travel expenses. Instead, Defendants passed these costs on to Plaintiff
23 and class members. Defendants have, and continue to have, a company-wide policy and/or
24 practice of not reimbursing employees for expenses necessarily incurred.

25     104.    Defendants' company-wide policy and/or practice of passing on their operating
26 costs to Plaintiff and class members by requiring that they use their personal cellular phones
27 and vehicles for business and failing to reimburse cellular phone and travel expenses, violates
28 California Labor Code section 2802. Defendants have intentionally and willfully failed to

1   fully reimburse Plaintiff and other class members for necessary business-related expenses and

2   costs.

3       105.    Plaintiff and class members are entitled to recover from Defendants their

4   business-related expenses incurred during the course and scope of their employment, plus

5   interest.

6                          **EIGHTH CAUSE OF ACTION**

7       **Violation of California Business & Professions Code §§ 17200, *et seq.* –**

8                          **Unlawful Business Practices**

9                          **(Against all Defendants)**

10      106.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

11  and every allegation set forth above.

12      107.    Defendants are "persons" as defined by California Business & Professions

13  Code sections 17201, as they are corporations, firms, partnerships, joint stock companies,

14  and/or associations.

15      108.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair,

16  unlawful and harmful to Plaintiff, class members, and to the general public.  Plaintiff has

17  suffered injury in fact and has lost money as a result of Defendants' unlawful business

18  practices.  Plaintiff seeks to enforce important rights affecting the public interest within the

19  meaning of Code of Civil Procedure section 1021.5.

20      109.    Defendants' activities, as alleged herein, are violations of California law, and

21  constitute unlawful business acts and practices in violation of California Business &

22  Professions Code sections 17200, *et seq.*

23      110.    A violation of California Business & Professions Code sections 17200, et seq.

24  may be predicated on the violation of any state or federal law.  In the instant case, Defendants'

25  policies and practices have violated state law in at least the following respects:

26          (a)     Requiring non-exempt, hourly-paid employees, including Plaintiff and

27                  class members, to work overtime without paying them proper

28                  compensation in violation of California Labor Code sections 510 and

1198 and the applicable IWC Order, as alleged herein;

(b) Failing to pay at least minimum wage to Plaintiff and class members in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 and the applicable IWC Order, as alleged herein;

(c) Failing to provide uninterrupted meal and rest periods to Plaintiff and class members in violation of California Labor Code sections 226.7, 512(a), 1198, and the applicable IWC Order, as alleged herein;

(d) Failing to provide Plaintiff and class members with accurate wage statements and failing to maintain accurate payroll records in violation of California Labor Code sections 226(a), 1174(d), 1198, and the applicable IWC Order, as alleged herein;

(e) Failing timely to pay all earned wages to Plaintiff and class members in violation of California Labor Code section 204 and the applicable IWC Order, as set forth below;

(f) Failing to pay the costs of mandatory physical examinations and/or drug testing in violation of California Labor Code section 222.5, as set forth below;

(g) Failing to reimburse Plaintiff and class members for all business expenses necessarily incurred in violation of California Labor Code sections 2802, as alleged herein; and

(h) Failing to provide written notice of information material to Plaintiff and class members' employment with Defendants in violation of Labor Code section 2810.5(a)(1)(A)-(C), as set forth below.

111. At all times relevant herein, Labor Code section 204 provides that all wages earned by any person in any employment between the first (1st) and the fifteenth (15th) days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the sixteenth (16th) and the twenty-sixth (26th) day of the month during which the labor was performed.

112.    At all times relevant herein, Labor Code section 204 provides that all wages earned by any person in any employment between the sixteenth (16th) and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the first (1st) and the tenth (10th) day of the following month.

113.    At all times relevant herein, Labor Code section 204 provides that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.  Alternatively, at all times relevant herein, Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

114.    At all relevant times herein, Defendants willfully failed to pay Plaintiff and class members all wages due including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages, within the time periods specified by California Labor Code section 204.

115.    At all times relevant herein, Defendants implemented, on a company-wide basis, an employer-imposed requirement that Plaintiff and class members undergo a mandatory drug test, but required them to do so at their own expense.  As stated, upon information and belief, Defendants had a company-wide policy requiring that all new employees, including Plaintiff and class members, travel to a specified medical clinic on their own time and use their own means of transportation to undergo drug testing.  At all times, upon information and belief, Defendants were in control of scheduling the date and time for the drug testing, selecting the provider/facility where the drug testing was to take place, and determining the scope of the examination and drug test.  However, Defendants did not compensate Plaintiff and class members for the time they spent traveling to and from drug testing, for the time they spent undergoing drug testing or for the travel expenses they incurred getting to and from the clinic.

116.    During the relevant time period, as stated, Plaintiff was instructed by

CLASS ACTION COMPLAINT

Defendants to travel to a specific medical clinic and obtain a drug test. Plaintiff followed Defendants' instructions, traveled to the clinic, and underwent the required drug test. Plaintiff spent several hours traveling to and from the clinic and undergoing the mandatory drug testing. However, Defendants did not compensate Plaintiff for this time or reimburse him for his travel expenses to and from the clinic.

117. At all relevant times herein, California's Wage Theft Prevention Act was enacted to ensure that employers provide employees with basic information material to their employment relationship at the time of hiring, and to ensure that employees are given written and timely notice of any changes to basic information material to their employment. Codified at California Labor Code section 2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must provide written notice to employees containing basic and material payroll information, including, among other things, the rate(s) of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, the regular payday designated by the employer, and any allowances claims as part of the minimum wage, including meal or lodging allowances. Labor Code § 2810.5(a)(1)(A)-(C).

118. At all relevant times, on information and belief, Defendants failed to provide written notice to Plaintiff and class members that lists the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C) on a company-wide basis.

119. Defendants' failure to provide Plaintiff and class members with written notice of basic information regarding their employment with Defendants is in violation of Labor Code section 2810.5.

120. As a result of the violations of California law herein described, Defendants unlawfully gained an unfair advantage over other businesses. Plaintiff and class members have suffered pecuniary loss by Defendants' unlawful business acts and practices alleged herein.

121. Pursuant to California Business & Professions Code sections 17200 *et seq.*, Plaintiff and class members are entitled to restitution of the wages withheld and retained by

CLASS ACTION COMPLAINT

1    Defendants during a period that commences four years prior to the filing of this complaint; a

2    permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and

3    class members; and an award of attorneys' fees pursuant to California Code of Civil

4    Procedure section 1021.5 and other applicable laws; and an award of costs.

5                              **NINTH CAUSE OF ACTION**

6          **Violation of California Business & Professions Code §§ 17200, et seq. –**

7                              **Unfair Business Practices**

8                                 **(Against all Defendants)**

9          122.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

10   and every allegation set forth above.

11         123.    Defendants are "persons" as defined by California Business & Professions

12   Code sections 17201, as they are corporations, firms, partnerships, joint stock companies,

13   and/or associations.

14         124.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair,

15   and harmful to Plaintiff, class members, and to the general public.  Plaintiff has suffered

16   injury in fact and has lost money as a result of Defendants' unfair business practices.  Plaintiff

17   seeks to enforce important rights affecting the public interest within the meaning of Code of

18   Civil Procedure section 1021.5.

19         125.    Defendants' activities, namely Defendants' company-wide practice and/or

20   policy of not paying Plaintiff and class members all meal and rest period premium wages due

21   to them under Labor Code section 226.7, deprived Plaintiff and class members of the

22   compensation guarantee and enhanced enforcement implemented by section 226.7.  The

23   statutory remedy provided by section 226.7 is a "'dual-purpose' remedy intended primarily to

24   compensate employees, and secondarily to shape employer conduct. *Safeway, Inc. v. Superior*

25   *Court*, 238 Cal. App. 4th 1138, 1149 (2015).  The statutory benefits of section 226.7 were

26   guaranteed to Plaintiff and class members as part of their employment with Defendants, and

27   thus Defendants' practice and/or policy of denying these statutory benefits constitutes an

28   unfair business practice in violation of California Business & Professions Code sections

1  17200, *et seq.* (Id.)

2  126.  A violation of California Business & Professions Code sections 17200, *et seq.*

3  may be predicated on any unfair business practice.  In the instant case, Defendants' policies

4  and practices have violated the spirit of California's meal and rest break laws and constitute

5  acts against the public policy behind these laws.

6  127.  Pursuant to California Business & Professions Code sections 17200 *et seq.*,

7  Plaintiff and class members are entitled to restitution for the class-wide loss of the statutory

8  benefits implemented by section 226.7 withheld and retained by Defendants during a period

9  that commences four years prior to the filing of this complaint; a permanent injunction

10  requiring Defendants to pay all statutory benefits implemented by section 226.7 due to

11  Plaintiff and class members; an award of attorneys' fees pursuant to California Code of Civil

12  Procedure section 1021.5 and other applicable laws; and an award of costs.

### REQUEST FOR JURY TRIAL

14  Plaintiff requests a trial by jury.

### PRAYER FOR RELIEF

16  Plaintiff, on behalf of all others similarly situated, prays for relief and judgment

17  against Defendants, jointly and severally, as follows:

18  1.  For damages, unpaid wages, penalties, injunctive relief, and attorneys' fees in

19  excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs.  Plaintiff

20  reserves the right to amend his prayer for relief to seek a different amount.

### Class Certification

22  2.  That this case be certified as a class action;

23  3.  That Plaintiff be appointed as the representative of the Class and Subclass;

24  4.  That counsel for Plaintiff be appointed as class counsel.

### As to the First Cause of Action

26  5.  That the Court declare, adjudge, and decree that Defendants violated California

27  Labor Code sections 510 and 1198 and applicable IWC Wage Orders by willfully failing to

28  pay all overtime wages due to Plaintiff and class members;

6.      For general unpaid wages at overtime wage rates and such general and special damages as may be appropriate;

7.      For pre-judgment interest on any unpaid overtime compensation commencing from the date such amounts were due, or as otherwise provided by law;

8.      For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a); and

9.      For such other and further relief as the Court may deem equitable and appropriate.

### As to the Second Cause of Action

10.     That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 by willfully failing to pay minimum wages to Plaintiff and class members;

11.     For general unpaid wages and such general and special damages as may be appropriate;

12.     For pre-judgment interest on any unpaid compensation from the date such amounts were due, or as otherwise provided by law;

13.     For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a);

14.     For liquidated damages pursuant to California Labor Code section 1194.2; and

15.     For such other and further relief as the Court may deem equitable and appropriate.

### As to the Third Cause of Action

16.     That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 226.7, 512(a), and 1198 and applicable IWC Wage Order(s) by willfully failing to provide all meal periods to Plaintiff and class members;

17.     That the Court make an award to the Plaintiff and class members of one (1) hour of pay at each employee's regular rate of pay for each workday that a meal period was not provided;

1    18.    For all actual, consequential, and incidental losses and damages, according to

2    proof;

3    19.    For premiums pursuant to California Labor Code section 226.7(b);

4    20.    For pre-judgment interest on any unpaid meal period premiums from the date

5    such amounts were due, or as otherwise provided by law;

6    21.    For attorneys' fees pursuant to California Code of Civil Procedure section

7    1021.5, or as otherwise provided by law; and

8    22.    For such other and further relief as the Court may deem equitable and

9    appropriate.

10    **As to the Fourth Cause of Action**

11    23.    That the Court declare, adjudge and decree that Defendants violated California

12    Labor Code sections 226.7 and 1198 and applicable IWC Wage Orders by willfully failing to

13    provide all rest periods to Plaintiff and class members;

14    24.    That the Court make an award to the Plaintiff and class members of one (1) hour

15    of pay at each employee's regular rate of pay for each workday that a rest period was not

16    provided;

17    25.    For all actual, consequential, and incidental losses and damages, according to

18    proof;

19    26.    For premiums pursuant to California Labor Code section 226.7(b);

20    27.    For pre-judgment interest on any unpaid rest period premiums from the date

21    such amounts were due, or as otherwise provided by law;

22    28.    For attorneys' fees pursuant to California Code of Civil Procedure section

23    1021.5, or as otherwise provided by law; and

24    29.    For such other and further relief as the Court may deem equitable and

25    appropriate.

26    **As to the Fifth Cause of Action**

27    30.    That the Court declare, adjudge and decree that Defendants violated the

28    recordkeeping provisions of California Labor Code section 226(a) and applicable IWC Wage

CLASS ACTION COMPLAINT

1  Orders as to Plaintiff and class members, and willfully failed to provide accurate itemized

2  wage statements thereto;

3     31.    For all actual, consequential and incidental losses and damages, according to

4  proof;

5     32.    For injunctive relief pursuant to California Labor Code section 226(h);

6     33.    For statutory penalties pursuant to California Labor Code section 226(e);

7     34.    For attorneys' fees and costs pursuant to California Labor Code section

8  226(e)(1); and

9     35.    For such other and further relief as the Court may deem equitable and

10  appropriate.

11                        **As to the Sixth Cause of Action**

12     36.    That the Court declare, adjudge and decree that Defendants violated California

13  Labor Code sections 201 and 202 by willfully failing to pay overtime wages, minimum wages,

14  and meal and rest period premiums owed at the time of termination of the employment of

15  Plaintiff and other terminated class members;

16     37.    For all actual, consequential and incidental losses and damages, according to

17  proof;

18     38.    For waiting time penalties according to proof pursuant to California Labor

19  Code section 203 for all employees who have left Defendants' employ;

20     39.    For pre-judgment interest on any unpaid wages from the date such amounts

21  were due, or as otherwise provided by law;

22     40.    For attorneys' fees pursuant to California Code of Civil Procedure section

23  1021.5, or as otherwise provided by law; and

24     41.    For such other and further relief as the Court may deem equitable and

25  appropriate.

26                        **As to the Seventh Cause of Action**

27

28

1    42.    That the Court declare, adjudge and decree that Defendants violated California

2    Labor Code section 2802 by willfully failing to reimburse and/or indemnify all business-

3    related expenses and costs incurred by Plaintiff and class members;

4    43.    For unpaid business-related expenses and such general and special damages as

5    may be appropriate;

6    44.    For pre-judgment interest on any unpaid business-related expenses from the

7    date such amounts were due, or as otherwise provided by law;

8    45.    For all actual, consequential, and incidental losses and damages, according to

9    proof;

10    46.    For attorneys' fees and costs pursuant to California Labor Code

11    section 2802(c), or as otherwise provided by law; and

12    47.    For such other and further relief as the Court may deem equitable and

13    appropriate.

14                              **As to the Eighth Cause of Action**

15    48.    That the Court declare, adjudge and decree that Defendants conduct of failing

16    to provide Plaintiff and class members all overtime wages due to them, failing to provide

17    Plaintiff and class members all minimum wages due to them, failing to provide Plaintiff and

18    class members all meal and rest periods, failing to provide Plaintiff and class members

19    accurate and complete wage statements, failing to maintain accurate payroll records for

20    Plaintiff and class members, failing timely to pay Plaintiff and class members all earned

21    wages during employment, failing to reimburse Plaintiff and class members for the costs of

22    mandatory drug testing, failing to reimburse Plaintiff and class members for business-related

23    expenses, and failing to provide written notice of information material to employment,

24    constitutes an unlawful business practice in violation of California Business and Professions

25    Code sections 17200, *et seq.*;

26    49.    For restitution of unpaid wages to Plaintiff and all class members and

27    prejudgment interest from the day such amounts were due and payable;

28    50.    For the appointment of a receiver to receive, manage and distribute any and all

1   funds disgorged from Defendants and determined to have been wrongfully acquired by

2   Defendants as a result of violations of California Business & Professions Code sections 17200

3   *et seq.*;

4        51.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to

5   California Code of Civil Procedure section 1021.5; and

6        52.    For such other and further relief as the Court may deem equitable and

7   appropriate.

8                        **As to the Ninth Cause of Action**

9        53.    That the Court declare, adjudge and decree that Defendants' conduct of denying

10  Plaintiff and class members the statutory benefits guaranteed under section 226.7 constitutes

11  an unfair business practice in violation of California Business and Professions Code sections

12  17200, *et seq.*;

13       54.    For restitution of the statutory benefits under section 226.7 unfairly withheld

14  from Plaintiff and class members and prejudgment interest from the day such amounts were

15  due and payable;

16       55.    For the appointment of a receiver to receive, manage and distribute any and all

17  funds disgorged from Defendants and determined to have been wrongfully acquired by

18  Defendants as a result of violations of California Business & Professions Code sections 17200

19  *et seq.*;

20       56.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to

21  California Code of Civil Procedure section 1021.5;

22       57.    For pre-judgment and post-judgment interest as provided by law; and

23  //

24  //

25  //

26  //

27  //

28  //

1    58.    For such other and further relief as the Court may deem equitable and

2  appropriate.

3

4  Dated: June 29, 2018                          Respectfully submitted,

5                                                 Capstone Law APC

6
                                                      [signature: Bevin Allen Pike]
7                                      By:    _____
8                                                 Bevin Allen Pike
                                                   Jennifer R. Bagosy
9                                                  Suzy E. Lee
                                                   Ari Y. Basser

10                                               Attorneys for Plaintiff Shu Wu

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

CASE NUMBER: CGC-18-567744   SHU WU VS. FERROVIAL SERVICES INFRASTRUCTURE I

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:** NOV-28-2018

**TIME:** 10:30AM

**PLACE:** Department 610
400 McAllister Street
San Francisco, CA 94102-3680

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference. However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11. For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3869

See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Bevin Allen Pike (SBN 221936), Jennifer R. Bagosy (SBN 223145)<br>Suzy E. Lee (SBN 271120), Ari Y. Basser (SBN 272618)<br>Capstone Law APC<br>1875 Century Park East, Suite 1000, Los Angeles, California 90067<br>TELEPHONE NO.: (310) 556-4811    FAX NO.: (310) 943-0396<br>ATTORNEY FOR (Name): Plaintiff Shu Wu | ENDORSED<br>F I L E D<br>San Francisco County Superior Court<br><br>JUN 2 9 2018<br><br>CLERK OF THE COURT<br>BY:   NEYL WEBB<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
Shu Wu v. Ferrovial Services Infrastructure, Inc., et al

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CGC - 1 8 - 5 6 7 7 4 4 |
| | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

   **Auto Tort**
   [ ] Auto (22)
   [ ] Uninsured motorist (46)
   **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
   [ ] Asbestos (04)
   [ ] Product liability (24)
   [ ] Medical malpractice (45)
   [ ] Other PI/PD/WD (23)
   **Non-PI/PD/WD (Other) Tort**
   [ ] Business tort/unfair business practice (07)
   [ ] Civil rights (08)
   [ ] Defamation (13)
   [ ] Fraud (16)
   [ ] Intellectual property (19)
   [ ] Professional negligence (25)
   [ ] Other non-PI/PD/WD tort (35)
   **Employment**
   [ ] Wrongful termination (36)
   [ ] Other employment (15)

   **Contract**
   [ ] Breach of contract/warranty (06)
   [ ] Rule 3.740 collections (09)
   [ ] Other collections (09)
   [ ] Insurance coverage (18)
   [ ] Other contract (37)
   **Real Property**
   [ ] Eminent domain/inverse condemnation (14)
   [ ] Wrongful eviction (33)
   [ ] Other real property (26)
   **Unlawful Detainer**
   [ ] Commercial (31)
   [ ] Residential (32)
   [ ] Drugs (38)
   **Judicial Review**
   [ ] Asset forfeiture (05)
   [ ] Petition re: arbitration award (11)
   [ ] Writ of mandate (02)
   [ ] Other judicial review (39)

   **Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
   [ ] Antitrust/Trade regulation (03)
   [ ] Construction defect (10)
   [ ] Mass tort (40)
   [ ] Securities litigation (28)
   [ ] Environmental/Toxic tort (30)
   [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
   **Enforcement of Judgment**
   [ ] Enforcement of judgment (20)
   **Miscellaneous Civil Complaint**
   [ ] RICO (27)
   [ ] Other complaint (not specified above) (42)
   **Miscellaneous Civil Petition**
   [ ] Partnership and corporate governance (21)
   [ ] Other petition (not specified above) (43)

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action (specify): Nine (9)
5. This case [ ] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. (You may use form CM-015.)

Date: June 29, 2018

Bevin Allen Pike
(TYPE OR PRINT NAME)                                    ▶ [signature]
                                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the *primary* cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
            or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment (non-
        domestic relations)
    Sister State Judgment
    Administrative Agency Award
        (not unpaid taxes)
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only (non-
        harassment)
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**



**Superior Court of California, County of San Francisco**
**Alternative Dispute Resolution**
**Program Information Package**



> The plaintiff must serve a copy of the ADR Information package
> on each defendant along with the complaint. (CRC 3.221(c))

## WHAT IS ADR?

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to court.

## WHY CHOOSE ADR?

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial." (Local Rule 4)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

## HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet)
- Indicating your ADR preference on the Case Management Statement (also attached to this packet); or
- Contacting the court's ADR office (see below) or the Bar Association of San Francisco's ADR Services at 415-782-8905 or www.sfbar.org/adr for more information.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA  94102
415-551-3869

*Or, visit the court ADR website at www.sfsuperiorcourt.org*

The San Francisco Superior Court offers different types of ADR processes for general civil matters; each ADR program is described in the subsections below:

## 1) SETTLEMENT CONFERENCES

The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute early in the litigation process.

**(A) THE BAR ASSOCIATION OF SAN FRANCISCO (BASF) EARLY SETTLEMENT PROGRAM (ESP):** ESP remains as one of the Court's ADR programs (see Local Rule 4.3) but parties must select the program – the Court no longer will order parties into ESP.

**Operation:** Panels of pre-screened attorneys (one plaintiff, one defense counsel) each with at least 10 years' trial experience provide a minimum of two hours of settlement conference time, including evaluation of strengths and weakness of a case and potential case value. On occasion, a panelist with extensive experience in both plaintiff and defense roles serves as a sole panelist. BASF handles notification to all parties, conflict checks with the panelists, and full case management. The success rate for the program is 78% and the satisfaction rate is 97%. Full procedures are at: www.sfbar.org/esp.

**Cost:** BASF charges an administrative fee of $295 per party with a cap of $590 for parties represented by the same counsel. Waivers are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see enclosed brochure.

**(B) MANDATORY SETTLEMENT CONFERENCES:** Parties may elect to apply to the Presiding Judge's department for a specially-set mandatory settlement conference. See Local Rule 5.0 for further instructions. Upon approval of the Presiding Judge, the court will schedule the conference and assign the case for a settlement conference.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO,** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending.

**Operation:** Experienced professional mediators, screened and approved, provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. The BASF website contains photographs, biographies, and videos of the mediators as well as testimonials to assist with the selection process. BASF staff handles conflict checks and full case management. Mediators work with parties to arrive at a mutually agreeable solution. The success rate for the program is 64% and the satisfaction rate is 99%.

**Cost:** BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the administrative fee are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see the enclosed brochure.

**(B) JUDICIAL MEDIATION** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at anytime throughout the litigation process.

**Operation:** Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge for the Judicial Mediation program.

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may elect any private mediator of their choice; the selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

## 3) ARBITRATION

An arbitrator is neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION:** When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.

**Operation:** Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.2 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after the filing of a complaint. There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF TO ENROLL IN THE LISTED BASF PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF.



# Superior Court of California
## County of San Francisco



HON. JOHN K. STEWART
PRESIDING JUDGE

## Judicial Mediation Program

JENIFFER B. ALCANTARA
ADR ADMINISTRATOR

The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to personal injury, professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial Mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable Michael I. Begert
The Honorable Suzanne R. Bolanos
The Honorable Angela Bradstreet
The Honorable Andrew Y.S. Cheng
The Honorable Samuel K. Feng
The Honorable Charles F. Haines

The Honorable Harold E. Kahn
The Honorable Curtis E.A. Karnow
The Honorable Charlene P. Kiesselbach
The Honorable James Robertson, II
The Honorable Richard B. Ulmer, Jr.
The Honorable Mary E. Wiss

Parties interested in Judicial Mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program and deliver a courtesy copy to Department 610. A preference for a specific judge may be indicated on the request, and although not guaranteed, every effort will be made to fulfill the parties' choice. Please allow at least 30 days from the filing of the form to receive the notice of assignment. The court's Alternative Dispute Resolution Administrator will facilitate assignment of cases that qualify for the program.

Note: Space and availability is limited. Submission of a stipulation to Judicial Mediation does *not* guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3869

**EJT-001-INFO**   Expedited Jury Trial Information Sheet

This information sheet is for anyone involved in a civil lawsuit who will be taking part in an expedited jury trial—a trial that is shorter and has a smaller jury than a traditional jury trial.

You can find the law and rules governing expedited jury trials in Code of Civil Procedure sections 630.01–630.29 and in rules 3.1545–3.1553 of the California Rules of Court. You can find these at any county law library or online. The statutes are online at *http://leginfo.legislature.ca.gov/faces/codes.xhtml.* The rules are at *www.courts.ca.gov/rules.*

### ① What is an expedited jury trial?

An expedited jury trial is a short trial, generally lasting only one or two days. It is intended to be quicker and less expensive than a traditional jury trial.

As in a traditional jury trial, a jury will hear your case and will reach a decision about whether one side has to pay money to the other side. An expedited jury trial differs from a regular jury trial in several important ways:

- **The trial will be shorter.** Each side has 5 hours to pick a jury, put on all its witnesses, show the jury its evidence, and argue its case.
- **The jury will be smaller.** There will be 8 jurors instead of 12.
- **Choosing the jury will be faster.** The parties will exercise fewer challenges.

### ② What cases have expedited jury trials?

- **Mandatory expedited jury trials.** All limited civil cases—cases where the demand for damages or the value of property at issue is $25,000 or less—come within the *mandatory expedited jury trial* procedures. These can be found in the Code of Civil Procedure, starting at section 630.20. Unless your case is an unlawful detainer (eviction) action, or meets one of the exceptions set out in the statute, it will be within the expedited jury trial procedures. These exceptions are explained more in ⑦ below.
  - **Voluntary expedited jury trials.** If your civil case is not a limited civil case, or even if it is, you can choose to take part in a *voluntary expedited jury trial,* if all the parties agree to do so. Voluntary expedited jury trials have the same shorter time frame and smaller jury that the

mandatory ones do, but have one other important aspect—all parties must waive their rights to appeal. In order to help keep down the costs of litigation, there are no appeals following a *voluntary* expedited jury trial except in very limited circumstances. These are explained more fully in ⑨.

### ③ Will the case be in front of a judge?

The trial will take place at a courthouse and a judge, or, if you agree, a temporary judge (a court commissioner or an experienced attorney that the court appoints to act as a judge) will handle the trial.

### ④ Does the jury have to reach a unanimous decision?

No. Just as in a traditional civil jury trial, only three-quarters of the jury must agree in order to reach a decision in an expedited jury trial. With 8 people on the jury, that means that at least 6 of the jurors must agree on the verdict in an expedited jury trial.

### ⑤ Is the decision of the jury binding on the parties?

Generally, yes, but not always. A verdict from a jury in an expedited jury trial is like a verdict in a traditional jury trial. The court will enter a judgment based on the verdict, the jury's decision that one or more defendants will pay money to the plaintiff or that the plaintiff gets no money at all.

But parties in an expedited jury trial, like in other kinds of trials, are allowed to make an agreement before the trial that guarantees that the defendant will pay a certain amount to the plaintiff even if the jury decides on a lower payment or no payment. That agreement may also put a cap on the highest amount that a defendant has to pay, even if the jury decides on a higher amount. These agreements are known as "high/low agreements." You should discuss with your attorney whether you should enter into such an agreement in your case and how it will affect you.

### ⑥ How else is an expedited jury trial different?

The goal of the expedited jury trial process is to have shorter and less expensive trials.

- The cases that come within the mandatory expedited jury trial procedures are all limited civil actions, and they must proceed under the limited discovery and

Judicial Council of California, www.courts.ca.gov
Revised July 1, 2016, Mandatory Form
Code of Civil Procedure, § 630.01–630.10
Cal. Rules of Court, rules 3.1545–3.1553

Expedited Jury Trial Information Sheet

EJT-001-INFO, Page 1 of 2

## EJT-001-INFO   Expedited Jury Trial Information Sheet

pretrial rules that apply to those actions. See Code of Civil Procedure sections 90–100.

- The voluntary expedited jury trial rules set up some special procedures to help those cases have shorter and less expensive trials. For example, the rules require that several weeks before the trial takes place, the parties show each other all exhibits and tell each other what witnesses will be at the trial. In addition, the judge will meet with the attorneys before the trial to work out some things in advance.

The other big difference is that the parties in either kind of expedited jury trial can make agreements about how the case will be tried so that it can be tried quickly and effectively. These agreements may include what rules will apply to the case, how many witnesses can testify for each side, what kind of evidence may be used, and what facts the parties already agree to and so do not need the jury to decide. The parties can agree to modify many of the rules that apply to trials generally or to any pretrial aspect of the expedited jury trials.

### (7) Do I have to have an expedited jury trial if my case is for $25,000 or less?

Not always. There are some exceptions.

- The mandatory expedited jury trial procedures do not apply to any unlawful detainer or eviction case.
- Any party may ask to opt out of the procedures if the case meets any of the criteria set out in Code of Civil Procedure section 630.20(b), all of which are also described in item 2 of the *Request to Opt Out of Mandatory Expedited Jury Trial* (form EJT-003). Any request to opt out must be made on that form, and it must be made within a certain time period, as set out in Cal. Rules of Court, rule 3.1546(c). Any opposition must be filed within 15 days after the request has been served.

> *The remainder of this information sheet applies only to voluntary expedited jury trials.*

### (8) Who can take part in a voluntary expedited jury trial?

The process can be used in any civil case that the parties agree may be tried in one or two days. To have a voluntary expedited jury trial, both sides must want one. Each side must agree to all the rules described in (1), and to waive most appeal rights. The agreements between the parties must be put into writing in a

document called *[Proposed] Consent Order for Voluntary Expedited Jury Trial*, which will be submitted to the court for approval. (Form EJT-020 may be used for this.) The court must issue the consent order as proposed by the parties unless the court finds good cause why the action should not proceed through the expedited jury trial process.

### (9) Why do I give up most of my rights to an appeal in a voluntary expedited jury trial?

To keep costs down and provide a faster end to the case, all parties who agree to take part in a voluntary expedited jury trial must agree to waive the right to appeal the jury verdict or decisions by the judicial officer concerning the trial unless one of the following happens:

- Misconduct of the judicial officer that materially affected substantial rights of a party;
- Misconduct of the jury; or
- Corruption or fraud or some other bad act that prevented a fair trial.

In addition, parties may not ask the judge to set the jury verdict aside, except on those same grounds. Neither you nor the other side will be able to ask for a new trial on the grounds that the jury verdict was too high or too low, that legal mistakes were made before or during the trial, or that new evidence was found later.

### (10) Can I change my mind after agreeing to a voluntary expedited jury trial?

No, unless the other side or the court agrees. Once you and the other side have agreed to take part in a voluntary expedited jury trial, that agreement is binding on both sides. It can be changed only if both sides want to change it or stop the process or if a court decides there are good reasons the voluntary expedited jury trial should not be used in the case. This is why it is important to talk to your attorney before agreeing to a voluntary expedited jury trial. This information sheet does not cover everything you may need to know about voluntary expedited jury trials. It only gives you an overview of the process and how it may affect your rights. You should discuss all the points covered here and any questions you have about expedited jury trials with an attorney before agreeing to a voluntary expedited jury trial.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: <br> ATTORNEY FOR (Name): | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO <br> 400 McAllister Street <br> San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER: <br><br> DEFENDANT/RESPONDENT: | |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: <br><br> DEPARTMENT 610 |
|---|---|

1) **The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐ **Early Settlement Program of the Bar Association of San Francisco (BASF)** - Pre-screened experienced attorneys provide a minimum of 2 hours of settlement conference time for a BASF administrative fee of $295 per party. Waivers are available to those who qualify. BASF handles notification to all parties, conflict checks with the panelists, and full case management. www.sfbar.org/esp

☐ **Mediation Services of BASF** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the internet.

☐ **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org

☐ **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org

   Judge Requested (see list of Judges currently participating in the program): _____

   Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

   ☐ 30-90 days    ☐ 90-120 days    ☐ Other (please specify) _____

☐    **Other ADR process (describe)** _____

2)    **The parties agree that the ADR Process shall be completed by (date):** _____

3)    **Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

| | |
|---|---|
| _____ <br> Name of Party Stipulating | _____ <br> Name of Party Stipulating |
| _____ <br> Name of Party or Attorney Executing Stipulation | _____ <br> Name of Party or Attorney Executing Stipulation |
| _____ <br> Signature of Party or Attorney | _____ <br> Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐   *Additional signature(s) attached*

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                         FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):*  ☐ **UNLIMITED CASE**      ☐ **LIMITED CASE** | |

*(Check one):*  ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000)   ☐ **LIMITED CASE** (Amount demanded is $25,000 or less)

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:                  Time:              Dept.:          Div.:          Room:

Address of court *(if different from the address above):*

☐ **Notice of Intent to Appear by Telephone,** by *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted jointly by parties *(names):*


2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*

      (3) ☐ have had a default entered against them *(specify names):*

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*


4. **Description of case**
   a. Type of case in ☐ complaint   ☐ cross-complaint   *(Describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

[ ]   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.   **Jury or nonjury trial**
The party or parties request [ ] a jury trial [ ] a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.   **Trial date**
a.  [ ]   The trial has been set for *(date):*
b.  [ ]   No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.   **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.  [ ]   days *(specify number):*
b.  [ ]   hours (short causes) *(specify):*

8.   **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial [ ] by the attorney or party listed in the caption [ ] by the following:
a.   Attorney:
b.   Firm:
c.   Address:
d.   Telephone number:
e.   E-mail address:
[ ]   Additional representation is described in Attachment 8.
f.   Fax number:
g.   Party represented:

9.   **Preference**
[ ]   This case is entitled to preference *(specify code section):*

10.   **Alternative dispute resolution (ADR)**
a.   **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

(1)   For parties represented by counsel: Counsel [ ] has [ ] has not   provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)   For self-represented parties: Party [ ] has [ ] has not   reviewed the ADR information package identified in rule 3.221.

b.   **Referral to judicial arbitration or civil action mediation** (if available).
(1)  [ ]   This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2)  [ ]   Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3)  [ ]   This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing to** participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed to** participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify)*:

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify)*:

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

17. **Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

18. **Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

19. **Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

20. **Total number of pages attached** *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.



# Superior Court of California
# County of San Francisco

Expedited Jury Trial Information Sheet

## What is an expedited jury trial?

An expedited jury trial is a trial that is much faster and has a smaller jury than a traditional jury trial. An expedited jury trial differs from a regular jury trial in several ways:

- **The trial will be shorter.** Each side has 3 hours to make opening statements, present witnesses and evidence, and make closing statements.

- **The jury will be smaller.** There will be 8 jurors instead of 12.

- **Choosing the jury will be faster.** The parties will exercise fewer preemptory challenges.

- **Parties will waive some post trial motions and rights to appeal.** Appeals are allowed only if there is: (1) Misconduct of the judicial officer that materially affected substantial rights of a party; (2) Jury misconduct; or (3) Corruption or fraud or some other bad act that prevented a fair trial.

  In addition, parties may not ask the judge to set the jury verdict aside, except on those same grounds.

## Does the jury have to reach a unanimous decision?

No. Just as in a traditional civil jury trial, only three-quarters of the jury must agree in order to reach a decision in an expedited jury trial. With 8 people on the jury, that means that at least 6 of the jurors must agree on the verdict in an expedited jury trial.

## Is the decision of the jury binding on the parties?

Generally, yes. A verdict from a jury in an expedited jury trial is like a verdict in a traditional jury trial. However, parties who take part in expedited jury trials are allowed to make an agreement before the trial that guarantees that the defendant will pay a certain amount to the plaintiff even if the jury decides on a lower payment or no payment. That agreement may also impose a cap, or maximum, on the highest amount that a defendant has to pay, even if the jury decides on a higher amount. These agreements are commonly known as "high/low agreements."

## How do I qualify for an expedited jury trial?

The process can be used in any civil case. To have an expedited jury trial, both sides must want one. Each side must agree that it will use only three hours to put on its case and agree to the other rules described above. This agreement must be put in writing in a Stipulation and submitted along with a Proposed Consent Order Granting an Expedited Jury Trial, which is given to the court for approval. The court will usually agree to the Consent Order.

## How do I request an expedited jury trial?

To have an expedited jury trial, both sides must submit a Stipulation and Proposed Consent Order for Expedited Jury Trial to the court for approval. This may happen at three stages of litigation:

1) **At Filing and Prior to Setting of a Trial Date:** Parties may submit a Stipulation to Expedited Jury Trial to Dept. 610 using the attached short form (see below). Parties must

*Information adapted from Judicial Council's Expedited Jury Trial Information Sheet EJT-010-INFO, New January 1, 2011*

also submit a Proposed Consent Order for Expedited Jury Trial to Dept. 610.

2) After a Trial Date has been Set: Parties submit a Stipulation and Proposed Consent Order for Expedited Jury Trial directly to Dept. 206 at least *30 days* prior to the assigned trial date.

3) After Trial Assignment: A Proposed Consent Order for Expedited Jury Trial may be submitted immediately to the assigned trial department not less than *30 days* prior to the assigned trial date.

Also, after a case is assigned to a particular judge for trial, the parties may ask the trial judge to have an Expedited Jury Trial, and the judge may permit the parties to then sign the appropriate Stipulation and Proposed Consent Order for Expedited Jury Trial.

**Can I change my mind after agreeing to an expedited jury trial?**

No, unless the other side or the court agrees. Once you and the other side have agreed to take part in an expedited jury trial the agreement is binding on both sides.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Expedited Jury Trial Request**
*Please submit a copy of this request to Dept. 610.*

Case No. _____

Case Name: _____        v. _____

The parties would like this action to be submitted to an Expedited Jury Trial.

The parties shall submit a consent order to the Court on or by _____

| | | |
|---|---|---|
| Name of Party | Name of Party/Attorney | Signature of Party |
| | | Dated: _____ |
| Name of Party | Name of Party/Attorney | Signature of Party |
| | | Dated: _____ |
| Name of Party | Name of Party/Attorney | Signature of Party |
| | | Dated: _____ |

Please note: a [Proposed] Consent Order for Expedited Jury Trial is still required in addition to this stipulation form.

You can find the law and rules governing expedited jury trials in Code of Civil Procedure sections 630.01– 630.12 and in rules 3.1545–3.1552 of the California Rules of Court. You can find these at any county law library or online. The statutes are online at *www.leginfo.ca.gov/calaw.html*. The rules are at *www.courts.ca.gov/rules*.

*Information adapted from Judicial Council's Expedited Jury Trial Information Sheet EJT-010-INFO, New January 1, 2011*

e Early Settlement Program:

arly Settlement provides:

Do you have a case filed in San
Francisco Superior Court and want
to settle sooner than your trial date?

Consider The Bar Association
of San Francisco's

Learn more about the Early Settlement Program—scan
the QRCode or visit www.sfbar.org/adr/esp



*Early*
*Settlement*
*Program*

## at is ESP?

Bar Association of San Francisco's **ly Settlement Program** (ESP) ivailable as one of San Francisco erior Court's Alternative Dispute olution (ADR) programs (Local Rule )).

is a **highly successful** ADR gram that handles cases in areas law such as business, personal iry, employment, labor, civil rights, crimination, insurance, malpractice, idlord/tenant, and many others.

P is **unique** in that the panelists, helping you move toward settlement, n provide you confidential feedback bout their evaluation of your case, cluding opinions as to potential ise value.

r more information as well as the omplete Policies & Procedures, go to: ww.sfbar.org/esp



Who are the Panelists?

Costs

Contact

## Steps:

The forms you need can be found at **www.sfbar.org/esp**, or email adr@sfbar.org or call 415-782-8905 for a packet to be sent to you.

❶ Please complete the ESP Agreement and return it to BASF via email at adr@sfbar.org or by fax to 415-989-0381. You don't have to get the other parties to sign, just send yours.

❷ When all parties have signed the ESP Agreement, you will be sent the Notice of ESP, along with an invoice.

❸ There is a $295 administrative fee per party, with a cap of $590 for multiple parties represented by the same attorney. You can pay by check, money order or credit card.

❹ Send your administrative fee by fax, email or mail to: BASF / ESP, 301 Battery Street, Third Floor, San Francisco, California 94111.

❺ When BASF receives the fees from all parties, your matter will be assigned to a panelist (or panel of 2), who you will work with to set the date, time and location for your conference.

❻ If you must reschedule your ESP conference date, work with the other side and your panelist(s) to set the new date. BASF does not need to be notified.

❼ Before your conference, provide a copy of your description of the dispute to all parties and panelists. BASF does not need a copy.

❽ If the matter is settled in your ESP conference, congratulations!

❾ If the matter is not settled in your ESP conference, your initial court date remains the same.

## Experienced mediators are available in the following areas

Business
Civil Rights
Commercial
Construction
Contracts
Disability
Discrimination
Education
Employment/Workplace
Environmental
Family
Family-Certified Specialists
Fee Disputes
Financial
Government
Insurance
Intellectual Property
Intra-Organizational
Labor
Landlord/Tenant
Land Use
LGBT Issues
Malpractice: Legal-Medical-Professional
Partnership Dissolutions
Personal Injury
Probate/Trust
Products Liability
Real Estate
Securities
Taxation
Uninsured Motorist
And more...

## TESTIMONIALS

"This was the third attempt to mediate this case, and the BASF mediator was far and away the best mediator. I dare say that we would not have settled today but for his efforts."

*George Yuhas, Esq.*
*Orrick, Herrington & Sutcliffe LLP*

"We had an excellent experience and, after 8 1/2 hours of mediation, [the BASF mediator] settled a very difficult case involving claims against four clients of ours by a wealthy investor who claimed inadequate disclosure was made."

*Robert Charles Friese, Esq.*
*Shartsis Friese LLP*

"When the other side made their offer, I thought there was no way we would reach an agreement – we were too far apart, but the mediator brought us together. He saved me a lot of time and aggravation by facilitating a settlement. Thanks!"

*Leslie Caplan*
*Global Warming Campaign Manager*
*Bluewater Network*

"BASF staff was very helpful – stayed on the task and kept after a hard to reach party. The mediator was great!"

*Mark Abelson, Esq.*
*Compagnoli, Abelson & Campagnoli*

"The [BASF] mediator was excellent! He was effective with some strong, forceful personalities."

*Denise A. Leadbetter, Esq.*
*Zacks, Utrecht & Leadbetter*



FOR
OUTSTANDING
ADR SERVICES
Voted into the
Hall of Fame
in The Recorder's
'Best of' Poll
5 YEARS IN A ROW
2010 - 2014

# MEDIATION SERVICES



PROCEDURES, PODCASTS,
FORMS, MEDIATOR BIOGRAPHIES
AND PHOTOGRAPHS:
www.sfbar.org/mediation

adr@sfbar.org or
415-982-1600



THE BAR ASSOCIATION OF
SAN FRANCISCO

# QUALITY          EXPERIENCE          TRUST

## WHAT IS BASF'S MEDIATION SERVICE?

The Bar Association of San Francisco's Mediation Services is a private mediation service which will assist you with almost any type of dispute, from simple contract disputes to complex commercial matters.

## WHO ARE THE MEDIATORS?

They are established mediators who have private mediation practices and have met our extensive experience requirements. By going through BASF you receive the services of these highly qualified mediators at a great value.

## HOW DO I LEARN MORE ABOUT THE MEDIATORS?

BASF's website at www.sfbar.org/mediation provides bios, photos and hourly rates of mediators. You can search by name or by area of law needed for your case. BASF staff is always available to assist you with selection or to answer questions.

## HOW MUCH DOES THE SERVICE COST?

A $295 per party administrative fee is paid to BASF at the time the Consent to Mediate form is filed. This fee covers the first hour of mediator preparation time and the first two hours of session time. Time beyond that is paid at the mediator's normal hourly rate.

## HOW IS THE MEDIATOR CHOSEN?

You may request a specific mediator from our website (www.sfbar.org/mediation) and indicate your choice on the BASF Consent to Mediate form, or you may indicate on the form that you would like BASF staff to assist with the selection.

## WHY SHOULD I GO THROUGH BASF? CAN'T I JUST CALL THE MEDIATOR DIRECTLY?

BASF mediators have agreed to provide three free hours as a service to BASF. If you go directly to one of our mediators, you do not qualify for the free hours unless you notify us. Once you have filed with us, you will talk directly to the mediator to ask questions and to set a convenient mediation date and time.

## HOW LONG IS THE MEDIATION SESSION?

The time spent in mediation will vary depending on your dispute. BASF mediators are dedicated to reaching a settlement, whether you need a few hours or several days.

## WHO CAN USE THE SERVICE?

BASF mediation can be utilized by anyone and is NOT limited to San Francisco residents or issues. Also, the service may be used before a court action is filed or at any time during a court action.

## OUR CASE IS FILED IN COURT. HOW DO WE USE BASF'S MEDIATION SERVICES?

When you file the San Francisco Superior Court's Stipulation to ADR form, check the box indicating "Mediation Services of BASF." Then complete BASF's Consent to Mediate form found on our website and file it with us. (If the matter was filed in a different county, please check with that court for the appropriate process.)

## WE ARE ON A DEADLINE; HOW QUICKLY CAN WE MEDIATE?

Once all parties have filed all the paperwork, BASF can normally have you in touch with the mediator within a day or two. If there is a deadline, BASF staff will give the matter top priority.

## WHAT TYPES OF DISPUTES CAN I MEDIATE?

BASF mediators are trained in 30+ areas of law. If you don't see the area you need on our website or in this brochure, contact us; it is very likely we can match your need with one of our panelists.

## MORE INFORMATION

Visit our website (www.sfbar.org/mediation) where you can search by name or by area of law. For personal assistance, please call 415.982.1600.

WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415.982.1600