1  Raul Perez (SBN 174687)
   Raul.Perez@capstonelawyers.com
2  Bevin Allen Pike (SBN 221936)
   Bevin.Pike@capstonelawyers.com
3  Orlando Villalba (SBN 232165)
   Orlando.Villalba@capstonelawyers.com
4  Trisha K. Monesi (SBN 303512)
   Trisha.Monesi@capstonelawyers.com
5  Capstone Law APC
   1875 Century Park East, Suite 1000
6  Los Angeles, California 90067
   Telephone:      (310) 556-4811
7  Facsimile:      (310) 943-0396

8  Attorneys for Plaintiffs Jason Brunton and Brian Cooley

9                  UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11 | SHU WU, JASON BRUNTON, and BRIAN | Case No.: 3:20-cv-09447-WHO
   | COOLEY, individually, and on behalf of other |
12 | members of the general public similarly situated | Assigned to the Hon. William H. Orrick

13 |                  Plaintiffs,                 | **NOTICE OF MOTION AND MOTION FOR**
   |                                              | **FINAL APPROVAL OF CLASS ACTION**
14 |              vs.                             | **SETTLEMENT; MEMORANDUM OF**
   |                                              | **POINTS AND AUTHORITIES**
15 | FERROVIAL SERVICES                           |
   | INFRASTRUCTURE INC., f/k/a                   | Date:    August 24, 2022
16 | BROADSPECTRUM INFRASTRUCTURE                 | Time:    2:00 p.m.
   | INC., f/k/a TRANSFIELD SERVICES              | Place:   Courtroom 2
17 | INFRASTRUCTURE, INC., a Virginia             |
   | corporation; BROADSPECTRUM                   |
18 | AMERICAS, INC., f/k/a TRANSFIELD             |
   | SERVICES AMERICAS, INC., a Delaware          |
19 | corporation; TIMEC SPECIALTY SERVICES,       |
   | INC., f/k/a BROADSPECTRUM SPECIALTY          |
20 | SERVICES, INC., a Delaware corporation;      |
   | TIMEC SERVICES, INC. f/k/a TIME              |
21 | COMPANY, INC., f/k/a BROADSPECTRUM           |
   | DOWNSTREAM SERVICES, INC., a                 |
22 | Delaware corporation, and DOES 1 through 10, |
   | inclusive                                    |
23 |                                              |
   |                  Defendant.                  |
24

25

26

27

28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 24, 2022 at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 2 of the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable William H. Orrick presiding, Plaintiffs Jason Brunton and Brian Cooley will, and hereby do, move this Court for entry of an order and judgment granting final approval of the class action settlement and all agreed-upon terms therein. This Motion, unopposed by Defendants Ferrovial Services Infrastructure Inc., f/k/a Broadspectrum Infrastructure Inc., f/k/a Transfield Services Infrastructure, Inc.; Broadspectrum Americas, Inc., f/k/a Transfield Services Americas, Inc.; Timec Specialty Services, Inc., f/k/a Broadspectrum Specialty Services, Inc.; and Timec Services, Inc., f/k/a Timec Company, f/k/a Broadspectrum Downstream Services, Inc., seeks final approval of: (1) the Class Action Settlement Agreement, (2) settlement payments to participating Class Members and the LWDA, and (3) costs/expenses to the settlement administrator, Simpluris, Inc.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the previously filed Motion for Attorneys' Fees, Costs and Expenses, and Class Representative Enhancement Payments; (4) the Declaration of Raul Perez; (5) the Declaration of Mary Butler on behalf of Simpluris, Inc., the settlement administrator; (6) the [Proposed] Order Granting Final Approval of Class Action Settlement; (7) the [Proposed] Judgment; (8) the records, pleadings, and papers filed in this action; and (9) upon such other documentary and/or oral evidence as may be presented to the Court at the hearing.

Dated: July 11, 2022

Respectfully submitted,

By:  /s/ Bevin Allen Pike
Raul Perez
Bevin Allen Pike
Orlando Villalba
Trisha K. Monesi
**CAPSTONE LAW APC**

Attorney for Plaintiffs Jason Brunton and Brian Cooley

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................... 1

II.  RELEVANT FACTS AND PROCEDURAL HISTORY ........................................... 3

III. SETTLEMENT TERMS ........................................................................................... 4

    A.   The Proposed Settlement Fully Resolves Plaintiffs' Claims............................ 4

        1.   Composition of the Settlement Class ...................................................... 4

        2.   Settlement Consideration.......................................................................... 4

        3.   Formula for Calculating Payments from the Net Settlement Amount ........................... 5

        4.   Release by the Settlement Class .............................................................. 6

    B.   The Notice and Settlement Administration Processes Were Completed Pursuant to
        the Court's Order ................................................................................................. 6

IV.  ARGUMENT .............................................................................................................. 7

    A.   Class Certification Requirements Are Met ........................................................ 7

    B.   The Court Should Grant Final Approval of the Class Settlement ..................... 7

        1.   The Settlement Was Negotiated at Arm's Length by Experienced Counsel................. 9

        2.   The Extent of Discovery Completed Supports Final Approval ................... 9

        3.   The Settlement Is Within the Range of Reasonableness Considering the
        Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Duration
        of Further Litigation ............................................................................... 10

        4.   The Settlement Class Has Responded Positively to the Settlement............................. 16

    C.   The Court Should Approve the PAGA Settlement ................................................. 17

    D.   The Requested Payment to the Settlement Administrator Is Reasonable and Should
        Receive Final Approval ....................................................................................... 20

V.   CONCLUSION........................................................................................................... 20

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035
(C.D. Cal. Dec. 30, 2013).......................................................................................... 19

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015).......................................................... 9

*Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945. (N.D. Cal. July 21,
2014)........................................................................................................................... 13

*Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016).......................... 7

*Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP, 2011 WL 672645 (N.D. Cal Feb.
16, 2011) ..................................................................................................................... 20

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010)............................. 16

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .................................. 7

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016)........................................ 19

*Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC, 2016 WL 3549473 (E.D. Cal.
June 29, 2016) ............................................................................................................ 19

*Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx) (OPX), 2011 WL 7563047
(C.D. Cal. Aug. 12, 2011) .......................................................................................... 19

*Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL 5364575
(E.D. Cal. Oct. 31, 2012)............................................................................................ 20

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL
1687832 (N.D. Cal. Apr. 22, 2010) ........................................................................... 16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)....................................... 7, 8, 16

*Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900 (N.D.
Cal. Apr. 3, 2009)....................................................................................................... 20

*In re Armored Car Antitrust Litig.,* 472 F. Supp. 1357 (N.D. Ga. 1979)..................... 12

*In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770 (N.D. Cal.
July 22, 2019) ............................................................................................................... 8

*In re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19 (W.D. Okla.1972) ...................... 13

*In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ........................ 11

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ....................................... 7

*In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ........................ 11

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................... 13

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002) ................................... 12

*Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752 (N.D. Cal. June 15, 2012) ........................................................................................................... 19

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) .............................................. 10

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............... 11, 16

*Newman v. Stein*, 464 F. 2d 689 (2d Cir. 1972) ...................................................................... 11

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................................ 11

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) ................................................... 11

*Trang v. Turbine Engine Components Technologies Corp.*, No. CV 12–07658 DDP (RZx), 2012 WL 6618854 (C.D. Cal. Dec. 19, 2012) ........................................................ 18


**STATE CASES**

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ............................................. 18, 19

*Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254 (Cal. Ct. App. May 12, 2011) ................................................................................................................................. 19

*Lawson v. ZB, N.A.*, 18 Cal. App. 5th 705 (2017) ................................................................... 18

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576  (2010) .......................................................... 20

*Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112 (2012) ...................................... 19

*ZB, N.A. v. Super. Ct.*, 8 Cal. 5th 175 (2019) ........................................................................ 17


**FEDERAL STATUTES**

Fed. R. Civ. P. 23(a) ................................................................................................................ 7

Fed. R. Civ. P. 23(b)(3) ............................................................................................................ 7

**STATE STATUTES**

Cal. Lab. Code § 2699(h)...................................................................................................................18

Cal. Lab. Code § 558..........................................................................................................................17

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1          **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.      INTRODUCTION**

3          On March 8, 2022, this Court granted preliminary approval of the Class Action Settlement

4    Agreement[1] and approved distribution of the Notice of Class Action Settlement to all Class Members.

5    Class Members were given 60 days to opt out or object to the Settlement ("Response Deadline"). Now

6    that the Response Deadline has passed, Plaintiffs Jason Brunton and Brian Cooley are pleased to report

7    that: (1) only one individual opted out of the Settlement Class; (2) no Class Members objected to the

8    Settlement; (3) the **entire Net Settlement Amount will be disbursed to all 58 Class Members who**

9    **did not opt out** ("Participating Class Members"); (4) the average payment to Participating Class

10   Members from the Net Settlement Amount is approximately $1,180, and the highest from the Net

11   Settlement Amount is approximately $4,360. (Declaration of Mary Butler ["Butler Decl."] ¶¶ 6-9.)

12         Plaintiffs now move for final approval of the class action settlement. This motion is unopposed

13   by Defendants Ferrovial Services Infrastructure Inc., f/k/a Broadspectrum Infrastructure Inc., f/k/a

14   Transfield Services Infrastructure, Inc.; Broadspectrum Americas, Inc., f/k/a Transfield Services

15   Americas, Inc.; Timec Specialty Services, Inc., f/k/a Broadspectrum Specialty Services, Inc.; and Timec

16   Services, Inc., f/k/a Timec Company, f/k/a Broadspectrum Downstream Services, Inc. (collectively with

17   Plaintiffs, the "Parties").

18         The principal terms of the Settlement provide for the following:

19   (1)      Conditional certification of a Settlement Class defined as: All current and former hourly,

20            non-exempt employees who are alleged to have worked for Defendants in California at

21            the Presidio Project during the period from June 29, 2014 through December 15, 2020

22            ("Settlement Class Members" or "Class Members").

23   (2)      A **non-reversionary** Gross Settlement Amount of $150,000. The Gross Settlement

24            Amount includes:

25            (a)      A Net Settlement Amount (the Gross Settlement Amount minus the requested

26                     attorneys' fees and costs, settlement administration costs, the payment to the

27   _____

[1] Hereinafter, the "Settlement" or "Settlement Agreement."  Unless indicated otherwise,
28   capitalized terms used herein have the same meaning as those defined by the Settlement.

California Labor and Workforce Development Agency ["LWDA"], and the Class Representative Enhancement Awards), which will be allocated to all Settlement Class Members on a pro-rata basis according to the number of pay periods each Settlement Class Member worked during the Class Period. **The Entire Net Settlement Amount will be paid to all Settlement Class Members who do not opt out of the Settlement Class, and without the need to submit claims for payment.**

(b)    Attorneys' fees in the amount of one-third of the Gross Settlement Amount (or $50,000), and litigation costs and expenses not to exceed $15,000, to Capstone Law APC ("Plaintiffs' Counsel").

(c)    Settlement administration costs of $4,500, to be paid to the jointly selected Settlement Administrator, Simpluris, Inc. ("Simpluris").

(d)    A $3,750 payment to the LWDA pursuant to the Labor Code Private Attorneys General Act of 2004 ("PAGA").

(e)    Class Representative Enhancement Awards of $2,500, each, to Jason Brunton and Brian Cooley for their service on behalf of the settlement class, the risks they took in pursuing the action on behalf of the class, and for general releases of all claims arising out of their employment with Defendants.

An objective evaluation of the Settlement confirms that the relief negotiated on the settlement class' behalf is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length, and the Settlement confers substantial benefits to Settlement Class Members. This relief—averaging approximately $1,180 per Settlement Class Member from the Net Settlement Amount—is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases. Moreover, by settling now rather than proceeding to trial, Settlement Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendants prevailing at trial, or of Plaintiffs prevailing at trial but losing on appeal.

Accordingly, given the Settlement's favorable terms, the Court's previous findings concerning the Settlement's fairness and reasonableness, and the complete absence of objection to the Settlement,

1  Plaintiffs respectfully request that the Court: (1) grant this Motion for Final Approval of the Settlement

2  Agreement; (2) grant final approval of the settlement administration costs/expenses; (3) enter judgment

3  pursuant to the Settlement Agreement; and (4) retain jurisdiction to enforce the Settlement.

4  **II.      RELEVANT FACTS AND PROCEDURAL HISTORY**

5           Ferrovial provides a broad range of infrastructure services, including design, construction,

6  financing, operation, and maintenance of transportation centers and urban services.

7           Mr. Shu Wu (now deceased) filed this action against Ferrovial in the San Francisco County

8  Superior Court on June 29, 2018. (Declaration of Raul Perez ["Perez Decl."] ¶ 2.) The action was

9  brought on behalf of a class of similarly situated non-exempt California employees. (*Id.*) Mr. Wu's initial

10 Complaint alleged the violation violations of the California Labor Code and Business and Professions

11 Code: (1) California Labor Code[2] sections 510 and 1198 (unpaid overtime); (2) sections 1182.12, 1194,

12 1197, 1197.1, and 1198 (unpaid minimum wages); (3) Sections 226.7, 512(a), and 1198 (failure to

13 provide meal periods); (4) Sections 226.7 and 1198 (failure to provide rest periods); (5) Sections 226(a),

14 1174(d), and 1198 (non-compliant wage statements and failure to maintain payroll records); (6) Sections

15 201 and 202 (wages not timely paid upon termination); (7) Section 2802 (unreimbursed business

16 expenses); (8) California Business & Professions Code sections 17200, *et seq.* (unlawful business

17 practices); and (9) California Business & Professions Code sections 17200, *et seq.* (Unfair Business

18 Practices). (*Id.*)

19          On November 30, 2020, Mr. Wu filed a first amended complaint which added claims for

20 violation of the Section 2698, *et seq.* ("PAGA") and the Fair Labor Standards Act ("FLSA"). (*Id.* at ¶ 3.)

21 Defendants subsequently removed the Action to the United States District Court, Northern District of

22 California on December 30, 2020. (*Id.*)

23          Plaintiffs' operative Third Amended Complaint alleges the following violations: (1) violation of

24 the FLSA (29 U.S.C. §§ 201, et seq.); (2) Sections 510 and 1198 (unpaid overtime); (3) Sections

25 1182.12, 1194, 1197, 1197.1, and 1198 (unpaid minimum wages); (4) Sections 226.7, 512(a), 516, and

26 1198 (failure to provide meal periods); (5) Sections 226.7, 516, and 1198 (failure to provide rest periods);

27

28 _____
   [2] Unless indicated otherwise, further statutory references are to the California Labor Code.

(6) Sections 226(a), 1174(d), and 1198 (non-compliant wage statements and failure to maintain payroll records); (7) Sections 201 and 202 (wages not timely paid upon termination); (8) Section 204 (failure to timely pay wages during employment); (9) Section 2802 (unreimbursed business expenses); (10) Sections 2698, *et seq.* (PAGA); (11) California Business & Professions Code sections 17200, *et seq.* (unlawful business practices); and (12) California Business & Professions Code sections 17200, *et seq.* (unfair business practices). (*Id.* at ¶ 4.)

Following a meaningful exchange of information and evidence, the Parties entered into settlement negotiations, and were eventually able to negotiate a complete settlement of the class' claims. (*Id.* at ¶ 5.) The terms of the settlement are now set forth in complete and final form in the Class Action Settlement Agreement. (*Id.*) At all times, the Parties' negotiations were adversarial and non-collusive. (*Id.*) The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the claims at issue. (*Id.*)

## III.     SETTLEMENT TERMS

### A.     The Proposed Settlement Fully Resolves Plaintiffs' Claims

#### 1.     Composition of the Settlement Class

The proposed Settlement Class consists of all current and former hourly, non-exempt employees who are alleged to have worked for Defendants in California at the Presidio Project during the period from June 29, 2014 through December 15, 2020. (Settlement Agreement ¶¶ 5, 25.)

#### 2.     Settlement Consideration

Plaintiffs and Defendants have agreed to settle the underlying class claims in exchange for the Gross Settlement Amount of $150,000. The Gross Settlement Amount includes: (1) automatic payments to all Participating Settlement Class Members—meaning, all Settlement Class Members except those who submit timely and valid Requests for Exclusion—from the Net Settlement Amount; (2) $50,000 in attorneys' fees (i.e., one-third of the common fund) and up to $15,000 in litigation costs to Plaintiffs' Counsel; (3) Settlement Administration Costs of $4,500; (4) a $3,750 payment to the LWDA; and (5) a Class Representative Enhancement Awards of $2,500, each, for Plaintiffs' service on behalf of the Settlement Class, the risks they took in pursuing their representative claims, and for a release of all claims arising out of their employment with Defendants. (Settlement Agreement ¶¶ 29, 47-51.)

Subject to the Court approving Attorneys' Fees and Costs, Settlement Administration Costs, the payment to the LWDA, and the Class Representative Enhancement Awards, the Net Settlement Amount will be distributed to Participating Settlement Class Members in full. (Settlement Agreement ¶ 44.)

### 3.     Formula for Calculating Payments from the Net Settlement Amount

Each Settlement Class Member's share of the Net Settlement Amount will be proportional to the number of pay periods during which they/s/he worked during the Class Period. (Settlement Agreement ¶ 45.) The Settlement Administrator will calculate Individual Settlement Payments as follows:

- Defendants will calculate the Total Pay Periods Worked by each Settlement Class Member who does not timely request exclusion from the Settlement. The respective Total Pay Periods Worked by each Settlement Class Member who does not timely request exclusion from the Settlement will be divided by the Total Pay Periods Worked by all Settlement Class Members who do not timely request exclusion, resulting in the Payment Ratio for the respective Settlement Class Member.

- The Payment Ratio for each Settlement Class Member who does not timely request exclusion will then be multiplied by the Net Settlement Amount to determine his or her Individual Settlement Payment amount. Each Individual Settlement Payment will also be reduced by any legally mandated deductions. Settlement Class Members (other than Plaintiffs) are not eligible to receive any compensation under the Settlement other than Individual Settlement Payments.

- The entire Net Settlement Amount will be disbursed to all Settlement Class Members who do not submit timely and valid Requests for Exclusion. If there are any valid and timely Requests for Exclusion, the Settlement Administrator shall proportionately increase the Individual Settlement Payment for each Participating Settlement Class Member according to the number of Pay Periods worked, so that the amount actually distributed to the Settlement Class equals 100% of the Net Settlement Amount.

(Settlement Agreement ¶ 45.)

**4.      Release by the Settlement Class**

In exchange for the Gross Settlement Amount, Plaintiffs and Settlement Class Members who do

not opt out will agree to release the Released Claims during the Class Period:

> Any and all known and unknown claims, losses, damages, liquidated damages, statutory penalties, interest, liabilities, causes of action, civil complaints, arbitration demands or suits which arise or could have arisen from the facts asserted in the Action and arising out of work at the Presidio Project California during the Class Period, including the First Amended Complaint, including violations for meal periods, rest breaks, failure to pay premium penalties for violations of meal or rest breaks, failure to pay minimum wages, failure to pay regular wages, failure to failure to pay overtime wages, failure to pay workplace reimbursements, failure to timely pay wages, failure to provide accurate wage statements, waiting time penalties, penalties under the Private Attorneys General Act sections 2698, et seq., arising under the California Labor Code and related orders of the California Industrial Welfare Commission, and made pursuant to the California Labor Code, and specifically including but not limited to California Labor Code sections: 201, 202, 203, 204, 210, 222.5, 226, 226.3, 226.7, 510, 516, 512, 558, 1174(d), 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 2698 et seq., 2802, 2810.5; Business and Professions Code section 17200, et seq.; or other remuneration whether sought under statute, tort, contract or as an unfair business practice for the Class Period. All Class Members who cash their settlement checks will also release all claims under the Fair Labor Standards Act based on the foregoing Released Claims.

(Settlement Agreement ¶ 19.)

**B.      The Notice and Settlement Administration Processes Were Completed Pursuant to the Court's Order**

As authorized by the Court's Order preliminarily approving the Settlement Agreement, the

Parties engaged Simpluris to provide settlement administration services. (Butler Decl. ¶ 2.) Simpluris's

duties have, and if the Court enters the final approval order, will include: (1) printing and mailing the

Notice of Class Action Settlement ("Notice"); (2) receiving and processing undeliverable Notices and

locating updated addresses for Class Members; (3) receiving and validating Requests for Exclusion; (4)

calculating and distributing the Class Settlement Amount; (5) tax reporting; (6) providing necessary

reports and declarations; and (7) performing such other tasks as set forth in the Settlement Agreement or

as the Parties mutually agree or that the Court orders. (*Id.*)

On March 8, 2022, Simpluris received the Class Notice prepared jointly by Plaintiffs' Counsel

and counsel for Defendants and approved by the Court. (Butler Decl. ¶ 3.) The Class Notice summarized

the Settlement's principal terms, provided Class Members with an estimate of how much they would be

1  paid if the Settlement received final approval, and advised Class Members about how to opt out of the

2  Settlement and how to object. (*Id.*)

3        Separately, counsel for Defendants provided Simpluris with a mailing list (the "Class List"),

4  which included each Class Member's full name, last known address, Social Security Numbers, and

5  information necessary to calculate payments. (Butler Decl. ¶ 3.) The mailing addresses contained in the

6  Class List were processed and updated using the National Change of Address Database maintained by

7  the U.S. Postal Service. (*Id.* at ¶ 4.) On April 7, 2022, Simpluris mailed Class Notices to Class Members

8  via First-Class U.S. mail. (*Id.*) Class Members were given 60 days to opt out or object to the Settlement.

9  Plaintiffs are pleased to report that only one individual opted out of the Settlement Class, and no Class

10  Members objected to the Settlement. (*Id.* at ¶¶ 6-7.)

11  **IV.    ARGUMENT**

12      **A.    Class Certification Requirements Are Met**

13        The Court certified the Class for settlement purposes upon Preliminary Approval, finding that

14  requirements under Rule 23(a) and Rule 23(b)(2) were satisfied. (*See* Dkt. No. 38.) Nothing has changed

15  that would affect the Court's ruling on class certification. *See Chambers v. Whirlpool Corp.*, 214 F.

16  Supp. 3d 877 (C.D. Cal. 2016) (reconfirming the certification set forth in the preliminary approval order

17  "[b]ecause the circumstances have not changed" since that order); *In re Hyundai & Kia Fuel Econ.*

18  *Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (courts must apply the criteria for class certification

19  "differently in litigation classes and settlement classes"). Therefore, the Court should grant final

20  certification of the Settlement Class.

21      **B.    The Court Should Grant Final Approval of the Class Settlement**

22        Upon final approval, the Court's duty is to determine whether the proposed Settlement is

23  "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.

24  1998). In evaluating the Settlement, the Court is guided by several important policies. First, federal

25  courts favor settlements, particularly in class actions, where the costs, delays and risks of continued

26  litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class*

27  *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong policy that favors

28  settlements, particularly where complex class action litigation is concerned"). Second, for settlements

reached through arms'-length negotiations, courts are to give:

> [P]roper deference to the private consensual decision of the parties. . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon*, 150 F.3d at 1027.

Guided by these policies, the district court then may consider some or all of the following factors in evaluating the reasonableness of a settlement: (1) the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status throughout trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of proceedings; (5) the participation of a governmental participant; (6) the experience and views of counsel; and (7) the reaction of class members. *See Hanlon*, 150 F.3d at 1026 ("*Hanlon* factors").

The amendments to Rule 23 direct the Court to consider a similar list of factors, including whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. FED. R. CIV. P. 23(e)(2). The Advisory Committee's notes clarify that this list of factors does not "displace" the *Hanlon* factors, "but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019) (quoting FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment).

Additionally, for class action settlements prior to contested certification, the Ninth Circuit further requires that the Court scrutinize the settlement even more closely, applying the so-called *Bluetooth*

factors.[3] *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). As set forth below, the Settlement satisfies all of these factors, meriting final approval.

### 1.    The Settlement Was Negotiated at Arm's Length by Experienced Counsel

The Settlement is the result of the Parties' protracted and adversarial settlement negotiations by experienced class action attorneys. Plaintiffs are represented by Capstone Law APC. Plaintiffs' Counsel employ seasoned class action attorneys who regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions. (Perez Decl. ¶¶ 10-18, Ex. 1.) Defendants are represented by Gordon Rees Scully Mansukhani, LLP, a respected defense firm.

### 2.    The Extent of Discovery Completed Supports Final Approval

Plaintiffs' Counsel conducted a thorough investigation into the factual and legal issues implicated by Plaintiffs' claims, and were able to objectively assess the settlement's reasonableness. (Perez Decl. ¶ 6.) For example, prior to filing the action, the Mr. Shu Wu contacted Plaintiffs' Counsel to discuss the factual bases for pursuing an action against Defendants for Labor Code violations. (*Id.*) Over the course of multiple interviews, Mr. Wu knowledgeably summarized those policies and practices to Plaintiffs' Counsel, and explained how the policies and practices were instituted and how they gave rise to the alleged Labor Code violations. (*Id.*) Based on these interviews, Plaintiffs' Counsel determined that there were legally sufficient grounds for pursuing an action against Defendants. (*Id.*) And in preparation for drafting the complaint, Plaintiffs' Counsel conducted their own preliminary investigation into the factual bases for Mr. Wu's claims, which entailed, *inter alia*, a careful examination of his personnel file and associated records. (*Id.*)

In response to their discovery requests, Plaintiffs' Counsel received a considerable amount of documents and data, including employee demographic data and Defendants' labor policies and procedures manuals which covered a broad range of topics including, *inter alia*, employee clock-in policies and procedures, attendance policies, meal periods/rest periods, overtime & premium pay, etc. (*Id.* at ¶ 7.) The document and data exchanges allowed Plaintiffs' Counsel to fully assess the nature and

---

[3] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 938 (9th Cir. 2011).

magnitude of the claims being settled, as well as the impediments to recovery, and ultimately enabled Plaintiffs' Counsel so as to make an independent assessment of the reasonableness of the settlement's terms. (*Id.*)

In summary, Plaintiffs' Counsel performed a thorough investigation into the claims at issue, which included: (1) determining Plaintiffs' suitability as private attorneys general and class representatives through interviews, background investigations, and analyses of their employment files and related records; (2) evaluating all of Plaintiffs' potential representative claims; (3) researching similar wage and hour class actions as to the claims brought, the nature of the positions, and the type of employer; (4) reviewing Defendants' employment policies and practices; (5) researching settlements in similar cases; and (6) evaluating Plaintiffs' claims and estimating Defendants' liability for purposes of settlement. (*Id.* at ¶ 8.)

By engaging in such a thorough investigation and evaluation of Plaintiffs' claims, Plaintiffs' Counsel can opine that the Settlement, for the consideration and on the terms set forth in the Settlement Agreement, is fair, reasonable, an adequate, and is in the best interests of Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, and various defenses asserted by Defendants. (*Id.* at ¶ 9.)

### 3. The Settlement Is Within the Range of Reasonableness Considering the Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Duration of Further Litigation

As discussed in detail below, an objective evaluation of the Settlement confirms that the relief negotiated on the Class' behalf—a $150,000 non-reversionary total Gross Settlement Amount—is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length and confers substantial benefits to Settlement Class Members. The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider the strength of the plaintiff's case and the amount offered in settlement, among other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Ultimately, "the district court's determination is nothing more than an amalgam of delicate balancing, gross

approximations, and rough justice," and there is no single "formula" to be applied; rather, the Court may

presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by

considering Plaintiffs' likelihood of recovery. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp*., 563 F.3d 948, 965 (9th Cir. 2009).

Federal district courts recognize that there is an inherent "range of reasonableness" in

determining whether to approve a settlement "which recognizes the uncertainties of law and fact in any

particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

completion." *Newman v. Stein*, 464 F. 2d 689, 693 (2d Cir. 1972); *see also Nat'l Rural Telecomm. Coop.

v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may

be acceptable even though it amounts to only a fraction of the potential recovery").[4]

| Defendant's Exposure for the Class Claims | |
|---|---|
| Meal Period Violations[5] | $323,900.00 |
| Rest Period Violations[6] | $350,550.00 |
| Minimum Wage Violations (Drug Testing)[7] | $3,690.00 |
| Business Expense Reimbursement Violations[8] | $25,650.00 |
| Wage Statement Violations[9] | $100,000.00 |
| Final Pay Violations[10] | $221,400.00 |

---

[4] *See also In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("settlement amount's ratio to the maximum potential recovery need not be the sole, or even dominant, consideration when assessing settlement's fairness"); *In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather the percentage should be considered in light of strength of the claims").

[5] During the Class Period, Class Members worked a combined total of approximately 17,100 shifts that qualified for meal periods. Defendants separately represented that they paid a total of 1,300 premiums for meal period violations during the Class Period. Defendants' exposure would therefore be calculated as follows: 17,100 shifts with violations, each earning one hour of premium pay at the average hourly rate of $20.50 – [1,300 premiums paid at the average hourly rate of $20.50] = $323,900.

[6] During the Class Period, Class Members worked a combined total of approximately 17,100 shifts that qualified for rest periods. All shifts are eligible for rest break premiums due to on-premises requirements. Defendants' exposure would be calculated as follows:  17,100 shifts with violations, each earning one hour of premium pay at the average hourly rate of $20.50 = $350,550.

[7] Each of the 60 Class Members had approximately 3 hours of off-the-clock tests associated with post-hire employment testing.  Defendants' exposure would be calculated as follows: 60 class members × $20.50 × 3 hours = $3,690.

[8] Based on a $30/month expenditure for each Class Member for cell phone expenses. Conservatively estimating that Class Members worked during a combined total of 3,420 weeks during the Class Period, Defendants' exposure would be calculated as follows: 3,420 weeks ÷ 4 × $30 = $25,650.

[9] Assuming maximum penalties of $4,000 for all Class Members who worked during the wage statement statute of limitations period: $4,000 × 25 = $100,000.

[10] Calculated by taking the product of the approximate number of former employees during the

| Defendant's Exposure for the Class Claims | |
| --- | --- |
| **TOTAL** | **$1,025,190.00** |

This estimate assumes that each and every one of Plaintiffs' claims would have been certified for class-wide resolution, that Plaintiffs would have prevailed at trial, and that the jury's verdict would have been affirmed on appeal. Understandably, for purposes of evaluating the settlement's reasonable, this estimate must be "tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014).

Ultimately, Plaintiffs' Counsel determined an appropriate range of recovery for settlement purposes by offsetting Defendants' maximum theoretical liability by: (i) the strength of the defenses to the merits of Plaintiffs' claims; (ii) the risk of class certification being denied; (iii) the risk of losing on any of a number of dispositive motions that could have been brought between certification and trial (e.g., motions to decertify the class, motions for summary judgment, and/or motions in limine) that might have eliminated all or some of Plaintiffs' claims, or barred evidence/testimony in support of the claims; (iv) the risk of losing at trial; (v) the chances of a favorable verdict being reversed on appeal; and (vi) the difficulties attendant to collecting on a judgment (collectively, the "Discount Factors").

After taking into account the Discount Factors, Plaintiffs' Counsel determined that it would be reasonable to settle for a fraction of Defendants' maximum potential exposure for the class claims (PAGA discussed in the following section), or approximately 15%. Such a discount is inherently reasonable given that Plaintiffs would have had to overcome **multiple, dependent** contingencies to prevail on his claims. If anything, the projected odds for each of the above contingencies is generous to the class' position, since plaintiffs in employment cases rarely prevail on **all of the claims** at any of these dispositive stages. Courts routinely approve settlements that provide a similar discounted range of the maximum potential recovery. *See, e.g., In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement amount can be 1.6% to 14% of the total estimated damages); *In re Armored Car Antitrust Litig.,* 472 F. Supp. 1357, 1373 (N.D. Ga. 1979)

Class Period (45): 45 × $20.50 /hour × 8 hours/day × 30 days = $221,400.

(settlements with a value of 1% to 8% of the estimated total damages were approved); *In re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (finding that settlement which amounted to 8% of maximum recovery "[fell] within the range of possible initial approval based on the strength of plaintiff's case and the risk and expense of continued litigation."); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of 6% to 8% of estimated damages).[11]

The instant settlement compares favorably to a previous wage and hour settlement approved by the Northern District of California for comparable wage and hour claims.

| *Ford v. CEC Entertainment, Inc.*, No. 3:14-cv-01420-RS (N.D. Cal.) | |
|---|---|
| Gross Settlement Amount | $2,500,000 |
| Total Number of Class Members | 10,526 |
| Average Class Member Payment | ≈ $150 |
| Final Approval Granted | November 18, 2016 (Judge Richard Seeborg) |
| Released Claims | All wage and hour claims, rights, demands, liabilities, and causes of action of every nature and description related to the claims alleged in the action against CEC, including without limitation statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or any other relief, including claims based on the following categories of allegations during the period January 27, 2010 through the date the Court grants final approval of the settlement: (i) all claims for unpaid wages and overtime; (ii) all claims for meal and rest break violations; (iii) all claims for unpaid |

[11] *See also In re Uber FCRA Litig.*, No. 14-cv-05200-EMC, 2017 U.S. Dist. LEXIS 101552, at *23- 24 (N.D. Cal. June 29, 2017) (granting preliminary approval to class action settlement where gross settlement fund, prior to deducting attorneys' fees and services awards, was valued at 7.5% or less of total possible verdict); *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759, at *21 (N.D. Cal. Oct. 11, 2016) (granting preliminary approval to class action settlement representing "8.1% of the full verdict value" with net settlement amount representing approximately 5.3% of full verdict value); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval to settlement with net recovery to Plaintiffs valued at 7.3% of potential maximum recovery); *Cruz v. Sky Chefs, Inc.*, No. 12-cv-02705-DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (granting final approval where gross settlement amount represented 8.6% of the maximum potential recovery from the class claims and estimated amount distributable to class after accounting for attorneys' fees and other deductions represented approximately 6.1% of maximum potential recovery); *In re LDK Solar Sec. Litig.*, No. 07-cv-05182-WHA, 2010 WL 3001384, at *2 (N.D. Cal. July 29, 2010) (granting final approving where "[t]he proposed settlement amount is [. . .] only about five percent of the estimated damages before fee and costs—even before any reduction thereof for attorney's fees and costs.").

| *Ford v. CEC Entertainment, Inc.*, No. 3:14-cv-01420-RS (N.D. Cal.) | |
|---|---|
| | minimum wages; (iv) all claims for the failure to timely pay wages upon termination; (v) all claims for the failure to timely pay wages during employment; (vi) all claims for wage statement violations; (vii) all claims for "off-the clock" work; (viii) all claims asserted under California Labor Code §§ 2698, et seq., and/or California Business & Professions Code §§ 17200, et seq. arising out of the aforementioned claims; and (ix) all claims that could have been alleged based on the circumstances and facts alleged in the action. |

| *Rivas v. BG Retail, LLC*, No. 5:16-cv-06458-BLF (N.D. Cal.) | |
|---|---|
| Gross Settlement Amount | $175,000 |
| Total Number of Class Members | 396 |
| Average Class Member Payment | ≈ $170 |
| Final Approval Granted | January 16, 2020 (Judge Beth Labson Freeman) |
| Released Claims | All claims that Defendants: (1) failed to pay overtime; (2) failed to pay minimum wages; (3) failed to provide meal periods; (4) failed to provide rest periods; (5) failed to pay wages due timely upon termination of employment; (6) failed to provide itemized wage statements to employees; (7) failed to compensate for split-shifts; (8) failed to reimburse employees for certain business expenses; (9) engaged in unfair business practices; and (10) violated California Labor Code §§ 201, 202, 203, 204, 210, 226, 226.7, 510, 512, 558, 1194, 1194.2, 1197, 1197.1, 1198, and 2802, California Business and Professions Code §§ 17200 et seq., as well as claims that could have been brought in the Complaint |

| *Berry v. Urban Outfitters Wholesale, Inc.*, No. 4:13-cv-02628-JSW (N.D. Cal.) | |
|---|---|
| Gross Settlement Amount | $5,000,000 |
| Total Number of Class Members | 12,308 |
| Average Class Member Payment | $255 |
| Final Approval Granted | April 7, 2016 (Judge Jeffrey S. White) |
| Released Claims | All wage and hour claims, rights, demands, liabilities, and causes of action of every nature and description, which occurred during the period from May 1, 2009 to the date on which the Court grants Preliminary Approval (for Urban Employees) and from October 29, 2009 to the date on which the Court grants Preliminary Approval (for Free People Employees), arising from or related to the facts or claims litigated in the Actions against Defendants, whether known or unknown, contingent or accrued, including without limitation statutory, constitutional, contractual, or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or any other relief, including claims based on the following categories of allegations: (i) all claims for unpaid overtime; (ii) all claims for meal and rest break violations; |

| *Berry v. Urban Outfitters Wholesale, Inc.*, No. 4:13-cv-02628-JSW (N.D. Cal.) | |
| --- | --- |
| | (iii) all claims for unpaid minimum wages; (iv) all claims for the failure to timely pay wages upon termination; (v) all claims for the failure to timely pay wages during employment; (vi) all claims for wage statement violations; (vii) all claims for unpaid vacation pay; (viii) all claims asserted through California Business & Professions Code §§ 17200, et seq., and/or California Labor Code §§ 2698, et seq. based on the preceding claims; (ix) all claims under the provisions of the California Labor Code and/or arising under the Wage Orders adopted by the California Industrial Welfare Commission that arise from or relate to the factual allegations alleged in the Actions; and (x) all claims that were or could have been asserted in the Actions that arise out of the same nucleus of operative facts (see International Union of Operating Engineers-Employers Const. Industry Pension, Welfare and Training Trust Funds v. Karr, 994 F.2d 1426, 1430 (9th Cir. 1993) ("res judicata bars not only all claims that were actually litigated, but also all claims that 'could have been asserted' in the prior action"; noting that whether the claim "arises out of the same transactional nucleus of facts [is] the criteria most stressed in our decisions"). Except as to Plaintiffs, the release expressly excludes claims that arise outside of the Class Period and unrelated claims, including but not limited to, claims for unemployment, disability, Workers' Compensation, retaliation, and discrimination. |

| *Moore v. Anthropologie*, No. 4:13-cv-02628-JSW (N.D. Cal.) | |
| --- | --- |
| Gross Settlement Amount | $875,000 |
| Total Number of Class Members | 723 |
| Average Class Member Payment | $710 |
| Final Approval Granted | April 7, 2016 (Judge Jeffrey S. White) |
| Released Claims | All wage and hour claims, rights, demands, liabilities, and causes of action of every nature and description, which occurred during the Class Period, arising from or related to the facts or claims litigated in the Action against Defendant, whether known or unknown, contingent or accrued, including without limitation statutory, constitutional, contractual, or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or any other relief, including claims based on the following categories of allegations: (i) all claims for unpaid overtime; (ii) all claims for meal and rest break violations; (iii) all claims for unpaid minimum wages; (iv) all claims for the failure to timely pay wages upon termination; (v) all claims for the failure to timely pay wages during employment; (vi) all claims for wage statement violations; (vii) all claims for unpaid vacation pay; (viii) all claims asserted through California Business & Professions Code §§ 17200, et seq., and/or California Labor Code §§ 2698, et seq. based on or related to the preceding claims; (ix) all claims under the |

| *Moore v. Anthropologie*, No. 4:13-cv-02628-JSW (N.D. Cal.) | |
|---|---|
| | provisions of the California Labor Code and/or arising under the Wage Orders adopted by the California Industrial Welfare Commission that arise from or relate to the facts alleged or litigated in the Action; and (x) all claims that were or could have been asserted in the Action that arise out of the same nucleus of operative facts (see International Union of Operating Engineers-Employers Const. Industry Pension, Welfare and Training Trust Funds v. Karr, 994 F.2d 1426, 1430 (9th Cir. 1993) ("res judicata bars not only all claims that were actually litigated, but also all claims that 'could have been asserted' in the prior action"; noting that whether the claim "arises out of the same transactional nucleus of facts [is] the criteria most stressed in our decisions")). Except as to Plaintiffs, the release expressly excludes claims that arise outside of the Class Period and unrelated claims, including but not limited to, claims for unemployment, disability, Workers' Compensation, retaliation, and discrimination. |

Notably, whereas the average class member payments in the above settlements ranged from $150 to $710, the average payment here is approximately $1,180.

### 4. The Settlement Class Has Responded Positively to the Settlement

In evaluating the fairness of a Settlement, the "absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *National Rural Tele. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal. 2004). Here, only one individual opted out of the Settlement Class, and not a single Class Member objected to the Settlement. (Butler Decl. ¶¶ 6-7.) The Class's response is "overwhelmingly positive," supporting approval of the Settlement. *See 7-Eleven Owners for Fair Franchising*, 85 Cal. App. 4th at 1152-53 (finding support for the settlement where 80 out of 5,454 class members elected to opt out and nine class members objected); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding 0 objections and 16 opt-outs out of 329 class members [4.86%] "strongly support[] settlement"); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *15 (N.D. Cal. Apr. 22, 2010) (finding an opt-out rate of 0.4% supported settlement). In other words, "[t]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

The average settlement payment from the Net Settlement Amount is approximately $1,180 and

the highest is approximately $4,360. (Butler Decl. ¶ 9.) This average net recovery is significantly higher than many wage and hour class action settlements approved by California state and federal courts. *See*, *e.g.*, *Badami v. Grassroots Campaigns, Inc.*, Case No. C 07-03465 JSW (N.D. Cal. Sept. 15, 2008) (average net recovery of approximately $195); *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct.) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20).

## C.     The Court Should Approve the PAGA Settlement

Pursuant to the Settlement Agreement, $5,000 from the Gross Settlement Amount shall be allocated to the resolution of the PAGA claim, of which 75% ($3,750) will be paid directly to the LWDA, and the remaining 25% ($1,250) will be paid to Participating Settlement Class Members.

This result was reached after good-faith negotiation between the parties. The amount was valued as follows: Based on information and evidence produced by Defendants during discovery, Plaintiffs' Counsel determined that aggrieved employees worked a combined total of approximately 1,545 pay periods during the PAGA statute of limitations period ("PAGA Period"). Unless otherwise provided by the Labor Code,[12] PAGA civil penalties for Labor Code violations are calculated according to Labor

---

[12] For example, Section 558 authorizes the Labor Commissioner to seek civil penalties for overtime and other workday violations at an initial violation rate of $50 for each underpaid employee for each pay period and a subsequent violation rate of $100 for each underpaid employee for each pay period. *See* Lab. Code § 558; *see also ZB, N.A. v. Super. Ct.*, 8 Cal. 5th 175, 197 (2019) (calculating PAGA penalties for overtime violations according to the Section 558 penalty rates); *Lawson v. ZB, N.A.*, 18 Cal. App. 5th 705, 724 (2017), as modified (Dec. 21, 2017), aff'd but criticized sub nom. *ZB, N.A. v. Super. Ct.*, 8 Cal. 5th 175 (2019) ("we note that with respect to the meal break and rest break violations .

1   Code 2699(f)(2): If, at the time of the alleged violation, the person employs one or more employees, the

2   civil penalty is $100 for each aggrieved employee per pay period for the initial violation and $200 for

3   each aggrieved employee per pay period for each subsequent violation (the "subsequent violation

4   penalty").

5          However, a number of courts have found that the "subsequent" penalty under PAGA applies

6   only after a court or the Labor Commissioner determines that the employer has violated the Labor Code.

7   *See Vieyara-Flores v. Sika Corp.*, No. EDCV19606JVSKKX, 2019 WL 2436998, at *5 (C.D. Cal. June

8   10, 2019) ("employers are not subject to heightened penalties . . . until a court or commissioner notifies

9   the employer that it is in violation of the Labor Code . . . [Plaintiff] has not offered evidence that the

10  Labor Commission or a court has notified them of PAGA violations [thus] PAGA's heightened penalty

11  of $200 for subsequent violations will not be calculated to determine the amount in controversy"); *Chen*

12  *v. Morgan Stanley Smith Barney, LLC*, No. 8:14-CV-01077 ODW (FFMx), 2014 WL 4961182 (C.D.

13  Cal., October 2, 2014) ("Under the Labor Code, if an employer does not have notice that they are

14  committing a violation, they are not subject to the heightened penalties."); *Trang v. Turbine Engine*

15  *Components Technologies Corp.*, No. CV 12–07658 DDP (RZx), 2012 WL 6618854 (C.D. Cal. Dec.

16  19, 2012) ("courts have held that employers are not subject to heightened penalties for subsequent

17  violations unless and until a court or commissioner notifies the employer that it is in violation of the

18  Labor Code"), citing *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008). Under this line of

19  cases, Defendants' exposure would be approximately $154,500 = 1,545 violative pay periods × $100.

20         It should be noted that PAGA gives the Court wide latitude to reduce the amount of civil

21  penalties "based on the facts and circumstances of a particular case" when "to do otherwise would result

22  in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(h). In

23  reducing PAGA penalties, courts have considered issues including whether the employees suffered

24  actual injury from the violations, whether the defendant was aware of the violations, and the employer's

25  willingness to fix the violation. *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 528 (2018)

26  (awarding PAGA penalties of only 0.2% of the maximum); *see also Cotter v. Lyft, Inc*., 193 F. Supp. 3d

27  _____

28  . . section 558 provides either a $50 or $100 assessment for each violation during a pay period").

1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPX), 2011 WL
7563047, at *4 (C.D. Cal. Aug. 12, 2011).

For example, during the penalty phase of trial in *Carrington*, the plaintiff requested PAGA
penalties in the amount of approximately $70 million. The trial court instead awarded only $150,000—
**or 0.21% of the maximum**—and stated that this reduction was warranted because imposing the
maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's "good faith
attempts" to comply with meal period obligations and because the court found the violations were
minimal. *Carrington*, 30 Cal. App. 5th at 517. The Court of Appeal affirmed the lower court's reduced
award of a $150,000 penalty under PAGA. *Id.* at 529.

Likewise, in *Covidien*, the Court reduced the potential penalties by over 82%, awarding
$500,000 instead of maximum penalties of $2.8 million. *Covidien*, 2011 WL 7563047 at *4; *see also*
*Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36 (2012) (affirming 30% reduction
under specified PAGA claim where the employer produced evidence that it took its obligations
seriously); *Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254, at *5-*7 (Cal. Ct. App. May
12, 2011) (reversing trial court decision denying any civil penalties where violations had been proven,
remanding for the trial court to exercise discretion to reduce, but not wholly deny, civil penalties); *Li v. A
Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. June 15,
2012) (denying PAGA penalties for violation of California Labor Code section 226 as redundant with
recovery on a class basis pursuant to California Labor Code section 226, directly); *Aguirre v. Genesis
Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035 at *2-*3 (C.D. Cal. Dec. 30, 2013)
(reducing penalty for past PAGA violations from $1.8 million to $500,000, after rejecting numerous
other PAGA claims).

Plaintiffs' Counsel therefore determined an appropriate range of settlement for PAGA penalties
as a percentage of the settlement range that was consistent with other hybrid class/PAGA settlements
approved by California courts.[13] Where PAGA penalties are negotiated in good faith and "there is no

---

[13] *Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC, 2016 WL 3549473 at *3 (E.D. Cal.
June 29, 2016) (preliminarily approving $1.95 million settlement containing $10,000 PAGA penalties
with $7,500 paid to LWDA); *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012

indication that [the] amount was the result of self-interest at the expense of other Settlement Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); *see, e.g.*, *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").

### D.   The Requested Payment to the Settlement Administrator Is Reasonable and Should Receive Final Approval

Plaintiffs request final approval of settlement administration costs in the amount of $4,500. (Butler Decl. ¶ 10.) Simpluris has promptly and properly distributed the Class Notice to all Class Members and completed its duties in accordance with the settlement terms and the Court's preliminary approval Order. (*See generally* Butler Decl.) Accordingly, the $4,500 payment is fair and reasonable and should be accorded final approval along with the rest of the Settlement terms.

## V.   CONCLUSION

The Parties have negotiated a fair Settlement of the wage and hour claims that likely would not have been brought, let alone successfully resolved, but for the effort and resolve of the Plaintiffs and their counsel. The Class Members' positive response indicates that the Settlement is fair and reasonable. Accordingly, Plaintiffs respectfully request that this Court grant final approval of the Settlement Agreement and enter judgment.

---

WL 5364575 at *7 (E.D. Cal. Oct. 31, 2012) (approving $3.7 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP, 2011 WL 672645 at *1 (N.D. Cal Feb. 16, 2011) (approving $6.9 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Guerrero v. R.R. Donnelley & Sons Co.*, Case No. RIC 10005196 (Riverside County Super. Ct. July 16, 2013; Judge Matthew C. Perantoni) (gross settlement fund of $1,100,000, of which $3,000 (or 0.3%) was allocated to the settlement of PAGA penalties); *Parra v. Aero Port Services, Inc.*, No. BC483451 (L.A. County Super. Ct. April 20, 2015; Judge Jane Johnson) (gross settlement fund of approximately $1,458,900, of which $5,000 (or 0.3%) was allocated to the settlement of PAGA penalties); *Thompson v. Smart & Final, Inc.*, No. BC497198 (L.A. County Super. Ct. Nov. 18, 2014; Judge William F. Highberger) (gross settlement fund of $3,095,000, of which approximately $13,333 (or 0.4%) was allocated to the settlement of PAGA penalties); *Chavez v. Vallarta Food Enterprises, Inc.*, No. BC490630 (L.A. County Super. Ct. Nov. 10, 2014; Judge William F. Highberger) (gross settlement fund of $1,545,900, of which $10,000 (or 0.6%) was allocated to the settlement of PAGA penalties); *Coleman v. Estes Express Lines, Inc.*, No. BC429042 (L.A. County Super. Ct. Oct. 3, 2013; Judge Kenneth R. Freeman) (gross settlement fund of $1,535,000, of which $1,000 (or 0.1%) was allocated to the settlement of PAGA penalties).

Dated: July 11, 2022

Respectfully submitted,

By:  /s/ Bevin Allen Pike
Raul Perez
Bevin Allen Pike
Orlando Villalba
Trisha K. Monesi
**CAPSTONE LAW APC**

Attorney for Plaintiffs Jason Brunton and Brian Cooley

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT